E. R. HOOPER, Plaintiff in Error, v. FREDERICK H. WINSTON, Trustee, etc., Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

A receiver is the officer of the court appointing him, and as such, has a very limited discretion in the performance of his duties. The court has a supervisory power over his expenditures.

It is the duty of a receiver to keep an account current of all his business in that capacity, and if, in his judgment, expenditures are necessary, he should apply to the court for leave to make such outlay.

No single act, calculated to diminish seriously the fund, could the receiver do, on his own motion.

A receiver is liable to account for any benefit, or interest, which he might make from the moneys in his hands.

23

THE facts appearing upon the record are as follows:

John McCardel, being indebted to the Commercial Exchange Company, (a banking institution in the city of Chicago,) in the sum of two thousand dollars, executed and delivered to Ashley Gilbert (the secretary of said company,) a certain mortgage deed, or conditional bill of sale, to secure the payment of said sum of two thousand dollars, and future advances not to exceed the sum of six thousand dollars, payable in one year. Which mortgage deed or conditional bill of sale embraced the leases, and furniture and fixtures of the hotel known as the "McCardel House," situate in the city of Chicago, and was duly recorded according to law.

That subsequently, the said John McCardel executed and delivered to A. M. Crane another chattel mortgage on the same leases, furniture and fixtures, to secure to the said Crane the payment of the sum of seven thousand two hundred dollars, and interest, payable in two years, provided the interest was paid at the end of one year from the date thereof.

That subsequently, the said John McCardel executed and delivered to Henry L. Wilson a chattel mortgage upon furniture and chattels not embraced in said previous mortgages to Gilbert and Crane, to secure to the said Wilson the payment of the sum of three hundred and sixty dollars, which was duly recorded, according to law.

That subsequently, the said John McCardel executed chattel mortgages to Erastus Corning & Co., John M. Davidson, and Frederick H. Winston, trustee, respectively, to secure the payment of the various sums therein expressed, as by reference to the same will fully appear, and which were duly recorded according to law.

That subsequently, the said A. M. Crane assigned all his right, title and interest in said mortgage to Jonas M. Crane.

That afterwards, the said Jonas H. Crane executed, acknowledged and delivered to E. R. Hooper a power of attorney; by which said Hooper was authorized " to take charge of, manage and adjust" said mortgage assigned to him as aforesaid, and also authorized " to take all legal and necessary and proper steps for the better securing said mortgage debt, or for adjusting the same, or having the same liquidated," and also authorizing him " to do and perform all and everything that might be necessary to be done in his judgment, in the premises, for my (his) interest."

That afterwards, the said mortgage to Ashley Gilbert was placed in the hands of the said E. R. Hooper for foreclosure and collection, and that under and by virtue of the power

of sale contained in said mortgage, the said Hooper advertised the leases and furniture and fixtures embraced in said mortgage, to be sold at public auction, in the city of Chicago, or so much thereof as might be necessary to raise a sum sufficient to pay said mortgage debt, which then amounted to six thousand dollars—the said Hooper, at the time of advertising the same, having taken possession of the furniture and fixtures, and placed a custodian in charge of the same.

That on the 10th day of May, 1855, (the day on which said sale was advertised to take place,) the said Frederick H. Winston, by his solicitors, Messrs. King, Scott & Wilson, filed his certain bill of complaint in the Cook County Court of Common Pleas, in which, after reciting the premises, and averring that the said mortgage to said Gilbert was illegal and void, as against the *cestui que trusts* of said complainant, for the reason that the same had been acknowledged before a notary public, and not before a justice of the peace, prayed for and obtained an injunction from said court, restraining and enjoining the said Hooper, and the said Gilbert, their agents, etc., from selling or otherwise disposing of said furniture and fixtures, but leaving them at liberty to sell said leases under said mortgage.

That said furniture, fixtures, etc., remained in the possession of said Hooper, as attorney for said Gilbert.

That a few days subsequently, the agents and attorneys of the said mortgagees, upon consultation, deeming it advisable to sell the said leases and furniture, and fixtures, as a whole, and in order to prevent a forfeiture of said leases for non-payment of rent, and to save the said furniture and fixtures from being sold to satisfy the arrearages of rent then due, entered into an arrangement with said Hooper, by which it was agreed he should be appointed receiver, pay the arrearages of rent then due, and sell and dispose of said leases, furniture and fixtures, and appropriate the proceeds of such sale according to the provisions of a written stipulation at that time executed by the agents and attorneys of said mortgage creditors and the mortgagor himself, which said stipulation is in the words and figures following, to wit:

COOK COUNTY COURT OF COMMON PLEAS.

FREDERICK H. WINSTON, Trustee, }
      *vs.*       }   In Chancery.
ASHLEY GILBERT, Trustee, *et al.* }

It is hereby stipulated and agreed by the attorneys and agents for the parties, plaintiffs and defendants in the above entitled cause, and by the mortgagor, that the Hon. JOHN M. WILSON, Judge of the Cook County Court of Common Pleas, shall

Hooper *v.* Winston, Trustee, etc.

appoint E. R. Hooper receiver, for the purpose of taking possession of and selling the goods and chattels embraced in the several mortgages and deeds of trust, referred to in the bill of complaint in said cause, and shall pass an order authorizing the sale of said goods and chattels, either together with the leases of the house and appurtenances, known as the "McCardel House," in the city of Chicago, as a whole, or separately from said leases, and either at public or private sale, as the said receiver shall deem most advantageous for all parties concerned, and may sell for cash or on short credit, as he may deem most expedient, and that the proceeds of said sale of said goods and chattels, after the payment of such liens as are undisputed, and such demands and liabilities against said "McCardel House," as it has been or may be necessary to incur and pay, in order to keep the said house in operation, shall be paid into the said Cook County Court of Common Pleas, to abide such decision as the said court may make in the premises.

It is also further agreed, that the said receiver be authorized to pay the mortgage debt, and costs and expenses incurred, of Henry L. Wilson, and that the same shall be deducted from the proceeds of the sale of said goods and chattels, before the same are paid into court.

Provided, that before said receiver shall sell said property at private sale, he shall obtain the consent thereto of the mortgage creditors, their agents or attorneys.

Provided, also, that if it is deemed best to sell both the leases and goods and chattels as a whole, that the mortgage debt held by Ashley Gilbert, secretary to the Commercial Exchange Company, shall be paid out of the proceeds of said sale, and not paid into court, if the same are sufficient.

    (Signed)            ERASTUS CORNING & Co.,
                         JOHN DAVIDSON,
                              *By Sedgwick & Walker, Attorneys.*
                         JOHN F. CLEMENTS,
                              *Attorney for Henry L. Wilson.*
                         JONAS H. CRANE, and
                         COMMERCIAL EXCHANGE Co.,
                              *By E. R. Hooper, Attorney.*
                         THOMAS W. HUTCHINSON,
                              *Agent for Hitchcock & Co.*
                         JOHN McCARDEL,
                         JOHN TAYLOR,
                         JAMES J. JOHNSON,
                         JAMES BURTON,
                              *By King, Scott & Wilson, Attorneys.*

That subsequently, a petition or motion was prepared and presented to the said court, for the purpose of carrying out said stipulation.

That on the hearing at the June term, the said court passed the following order:

"FREDERICK H. WINSTON, Trustee, }
            *vs.*          } Chancery.
   ASHLEY GILBERT *et al.*  }

" And now, at this day, coming on to be heard, the written stipulation heretofore filed in this cause, and signed by the attorneys and agents of the parties, complainant and defendants, and the motion of the complainant's solicitors for the appointment of a receiver, to sell and dispose of the property mentioned in the proceedings in said cause, according to the terms set forth in said written stipulation: It is thereupon ordered by the court, that Ezekiel R. Hooper be, and he is hereby appointed receiver, to sell and dispose of said property in the proceedings in said cause mentioned, and to dispose of and appropriate the proceeds thereof in the manner, and upon the terms prescribed in the said written stipulation. It is also ordered that the said Ezekiel R. Hooper, as receiver, give bond with surety or sureties to be approved by this court, for the faithful performance of the trust reposed in him by this decree or any future decree or order in the premises."

That according to the provisions of said stipulation said hotel was kept in operation until the 15th day of July, A. D. 1855, when the same was sold by said receiver as a whole, for the sum of eighteen thousand dollars, of which the sum of eight thousand dollars was paid in cash, and the residue secured by the notes of the purchaser, on a credit of six and twelve months, with interest at six per cent. per annum.

That afterwards, said receiver made his report to said court, which was excepted to, and an order entered by said court that said receiver make a further or supplemental report.

That afterwards, the said receiver filed a further or supplemental report in said cause.

That no exceptions were filed to said receiver's said supplemental report.

That according to said receiver's report, there had come into his hands, as receiver, from the sale of said property, for principal and interest, and from rents, the sum of $18,565.

That of said amount said receiver had paid out and disbursed the sum of $14,546.48, as follows: To extinguish liens, $2,606.38; for expenses of sale, $210.25; for expenses over receipts for keeping said hotel in operation, $3,451.45; to Ashley Gilbert, in full of his mortgage debt, $6,000; and to Jonas H. Crane, assignee of A. M. Crane, in part of his mortgage debt, $2,278.40—leaving a balance in the hands of the receiver, subject to the order of said court, of $4,018.52.

That afterwards, said receiver made a further payment to said Jonas H. Crane, on his said mortgage debt, of $2,000, leaving a balance of $2,018.52 in said receiver's hands, subject to the order of said court.

That on the 20th day of June, A. D. 1857, the said cause, by order of said court, was referred to the master in chancery of said court, to take proofs in relation to the premises.

That afterwards, said master in chancery made his report to said court of the proofs taken in said cause, and also his opinion of the proper allowances to be made to said receiver for his disbursements.

That by said master's report, he allowed to said receiver the sum of $3,091.27, for extinguishing liens on said property, for expenses in keeping said hotel in operation, and expenses for the sale thereof, and the further sum of $2,273.40, for the payment by said receiver to said Jonas H. Crane, on his said mortgage, and disallowed the payment of $6,000, made by said receiver to said Ashley Gilbert, on his said mortgage, and all other items of payments and disbursements made by said receiver, as claimed in his said report, and charging said receiver with a balance of $13,200.33.

That exceptions were filed to said master's report, by said receiver and other parties, and that no action was ever taken by said court upon said master's report, or the exceptions thereto.

That afterwards, the said cause was referred back to said master in chancery, to take further proofs therein.

That afterwards, on the —— day of August, A. D. 1858, the said master made his second report to said court, of the proofs taken before him.

That no proof was furnished before said master or before the court, in which it was attempted to impeach the correctness or good faith of said payments and disbursements claimed by said receiver in his said reports.

That proof was furnished by said receiver, to show that said disbursements for expenses for keeping said house in operation, were proper and legitimate for such purpose.

That it is admitted by stipulation that every payment and disbursement made by the receiver, and claimed as a credit, was made as claimed.

That afterwards, on the 8th day of September, A. D. 1858, it was stipulated and agreed in writing before said court, that all the testimony on file in said cause, including that reported by the master in the two reports, and that referred to in certain stipulations on file, " should be used on the hearing of said

cause," " subject to all legal exceptions as to its relevancy or competency, but that the opinion of the master reported thereon shall be disregarded by the court upon such hearing, and the hearing shall be had upon the proofs already taken, or hereafter to be taken in said cause."

That said receiver furnished vouchers or proofs of all his disbursements and payments claimed in his reports, and proofs that all moneys received in said hotel during the time the same had been kept in operation under said stipulation and order, had been disbursed and paid out by the clerks thereof (by whom they were all received,) for the small daily current expenses of said hotel, and that no part of the disbursements and payments claimed by said receiver had been paid out of the said receipts of said hotel. Also, that the small book, containing an account of said receipts and disbursements had been lost or mislaid. That said hotel had been conducted with all due economy, and every reasonable effort made to attract custom and patronage to it. The said receiver also furnished proofs of the payment made to Ashley Gilbert, and Jonas H. Crane, upon their respective mortgages.

That afterwards, said cause came on for final hearing before said court, and on the 18th day of November, A. D. 1859, the said court made and caused to be entered, a final decree in said cause, which decree is in the words and figures following, to wit:

FREDERICK H. WINSTON, Trustee, *et al.*
*vs.*
ASHLEY GILBERT, Trustee; ROSWELL CARTER, JONATHAN BLINN, JAMES LONG, JAMES PECK, JOHN S. NEWHOUSE, ISAAC COOK, SETH M. WARNER, PHILANDER EDDY, THOMAS RICHMOND, JOHN R. CASE, ASHLEY GILBERT, S. G. RUSSELL, Jr., EZEKIEL R. HOOPER, JONAS H. CRANE, ERASTUS CORNING & Co., I. M. B. DAVIDSON, and H. L. WILSON.

In Chancery Bill.

This cause having been brought to hearing upon the bill and answer of the defendants, Isaac Cook and Jonas H. Crane, and the replications thereto, and upon the proofs in this cause, and after hearing King, Scott & Wilson, solicitors for complainants, and W. T. Burgess, for defendant Isaac Cook, J. M. S. Causin, for defendant Ezekiel R. Hooper, and E. Van Buren, for defendant Jonas H. Crane, who is sued by the name of H. Crane, none of the other defendants having appeared on said hearing; and it appearing that due service of process has been made upon all of said defendants, and all of said defendants have appeared in said cause at the June term of this court, 1856; and it further appearing, that none of said defendants,

except the said Isaac Cook and Jonas H. Crane, have filed any answer in said cause ; and it further appearing, that at the June term of this court, 1858, an order was made that all the other defendants answer the bill of complaint, or that the bill be taken as confessed against them, and such defendants not having answered, according to said order, the default of all the defendants except said Cook and Jonas H. Crane, was duly entered, and the bill taken as confessed against them ; and it further appearing, that the bill in this cause was filed to settle and determine the rights and priorities of the respective mortgagees, trustees, and assignees and claimants mentioned in said bill, and to decree the application of the avails of the property mentioned in said bill to the payment thereof, according to their respective rights.

And it further appearing, that at the June term of this court, 1855, the defendant, Ezekiel R. Hooper, was appointed by this court receiver of the property embraced in the several mortgages mentioned in said bill of complaint, and accepted said trust, and that as such receiver he sold said property, and received therefor the sum of $18,565.

And it further appearing, that there was due on the trust deed or mortgage, made by John McCardel to Ashley Gilbert, as trustee for the Commercial Exchange Company, the sum of six thousand dollars, that such trust deed or mortgage was a valid lien, and was prior to all the other liens and claims mentioned in the said bill, and that said Ezekiel R. Hooper, as such receiver, out of the avails of the property which came into his hands as such receiver, had paid six thousand dollars to said Commercial Exchange Company, upon their said trust deed or mortgage.

And it further appearing, that the said mortgage made by said McCardel to Archibald M. Crane, mentioned in said bill of complaint, had, before the commencement of this suit, been duly transferred to Jonas H. Crane, who is made defendant in this suit by the name of H. Crane, and that the same is a valid mortgage.

And it further appearing, that there is now due and unpaid upon said last mentioned chattel mortgage, after allowing all payments heretofore made upon the same, the sum of five thousand three hundred and twenty-three dollars and forty-three cents, ($5,323.43.)

And it also appearing, that the defendant, Ezekiel R. Hooper, as such receiver, in pursuance of an order made by this court, on or about the 22nd day of October, 1859, has brought into this court the sum of twenty-one hundred and thirty-eight dol-

lars and fifty-two cents, and which is subject to the order of this court.

And it further appearing, that the said mortgage and trust deed to Ashley Gilbert, was the first lien upòn said property mentioned in said bill, and which has been paid by said Hooper, and that the said mortgage mentioned in the said bill of complaint, made by said McCardel to said Archibald M. Crane, and assigned to Jonas H. Crane, is a valid, legal lien upon said property, or the avails, and was next in priority to the said mortgage to said Gilbert, and is a prior lien to all the other mortgages and trust deeds and claimants mentioned in said bill, and as such is entitled to be paid out of the avails of said property.

And it also appearing, that the said Hooper has paid out various sums of money for the rents and expenses in keeping open the McCardel House, as such receiver, amounting in the aggregate to thirty-seven hundred and ten dollars and ninety-seven cents, ($3,710.97.) And it also appearing, that there is now in the hands of said Ezekiel R. Hooper, as such receiver, after allowing him all the moneys paid to the said Ashley Gilbert, trustee of Commercial Exchange Company, and to Jonas H. Crane, including the payment of a certain note against Reuben Lovejoy, and which said Crane received as cash, and all payments made to all other persons, and all expenses allowed by this court for keeping open the McCardel House, and after allowing him credit for the said moneys brought into this court, and after allowing him nine hundred dollars ($900) as his commissions as such receiver, the sum of twenty-two hundred and ninety-eight dollars and eighty-two cents, ($2,298.82,) including interest upon the balance in his hands after the date of his report, upon the basis stated in the statement hereto annexed.

It is therefore ordered, adjudged and decreed, that the said mortgage or trust deed made by said defendant, McCardel, to Ashley Gilbert, in trust for the Commercial Exchange Company, was a valid mortgage and a legal lien upon the said property mentioned in said bill, and was the first lien, and had priority over all other mortgages, trust deeds, and claimants mentioned in said bill of complaint, and that said Ezekiel R. Hooper having paid the same, amounting to six thousand dollars, ($6,000,) that the said Hooper be allowed such payment.

And it is further ordered, adjudged and decreed, that the mortgage made by defendant McCardel to Archibald M. Crane, on the first day of September, A. D. 1854, and mentioned in said bill, and which has been assigned to, and at the time of the commencement of this suit belonged and now belongs to the defendant Jonas H. Crane, was also a legal and valid claim upon the

property mentioned in the said mortgage, and set forth in said bill, and is a prior lien to all the mortgages, trust deeds and claimants mentioned in said bill, except the mortgage to Ashley Gilbert aforesaid, and which has been paid, and as such is entitled to be paid out of the said trust fund in this court, or in the hands of said Hooper, as such receiver, or to have the same applied to such payment as far as the same will go, upon which mortgage there is now due and unpaid, after deducting all payments thereon, the sum of fifty-eight hundred and twenty-three dollars and forty-three cents.

And it is further ordered, adjudged and decreed, that there is still in the hands of the said Ezekiel R. Hooper, as such receiver as aforesaid, after deducting all moneys paid by him, and after allowing him all such sums as the court deems reasonable and proper for keeping open said McCardel House, and for executing his trust, and after deducting twenty-one hundred and thirty-eight dollars and fifty-two cents, moneys brought into this court, in pursuance of an order of this court, made on or about the 22nd day of October, 1859, and after allowing him nine hundred dollars for his commissions, as such receiver, the sum of twenty-two hundred and ninety-eight dollars, and eighty-five cents.

And it is further ordered, adjudged and decreed, that the clerk of this court pay to the solicitor of defendant, Jonas H. Crane, to be applied upon the said mortgage of said Crane, as aforesaid, the said sum of twenty-one hundred and thirty-eight dollars and fifty-two cents, paid into court as aforesaid, or so much of it as shall remain after first paying the costs of this suit.

It is further ordered, that the said Ezekiel R. Hooper do, within ten days after service of a copy of this decree, bring and pay into this court the sum of twenty-two hundred and ninety-eight dollars and eighty-five cents, being the balance of moneys in his hands, as such receiver, and when the same shall be brought into this court, the clerk thereof shall pay the same over to the said Jonas H. Crane, or his solicitor, to be applied upon his said mortgage, as aforesaid. All further questions to carry out this decree are reserved.

To avails of sale of property, per your report, $18,565.00
Cr. By cash paid Commercial Exch.
     Bank, - - - - $6,000.00
     By amount paid Crane, - 2,278.40
     By note of Lovejoy's, received
       by Crane as cash, - - 2,000.00
     By amount allowed for rents,
       expenses, etc., - - - 3,710.97
     By amount allowed for com-
       missions, - - - - 900.00
                            ————— $14,884.77

                                       $3,680.23
Interest from June 2nd, '56, date of report, till
  Oct. 18th, 1859, - - - - - - 745.23

                                       $4,425.46
Deduct cash paid into court, - - - 2,138.52

                                       $2,286.94
Interest from Oct. 18th, till Nov. 18th, 1859, 11.89

                                       $2,298.82

J. M. S. CAUSIN, and E. R. HOOPER, for Plaintiff in Error.

VAN BURENS & GARY, for Defendant in Error.

BREESE, J. We think it must be conceded that Mr. Hooper was not receiver of this fund until he was appointed such by the court, on the agreement of the parties in interest. He then became an officer of the court, and so denominates himself in his several reports to the court—referring to himself as "your receiver." Hence, all doubt is removed as to the power from which he received his appointment, and the only question is, in what mode and to what extent was he accountable to the court? He was appointed receiver on behalf of all parties, and not of the complainant or of any one of the defendants only, but for the benefit of all parties who may establish rights in the cause; and the money in his hands is in the custody of the law, for whoever can make out a title to it. It is the court itself which has the care of the property in dispute, the receiver being but the creature of the court. As to his powers, he has no other than those conferred upon him by the order appointing him, and the course and practice of the court. *Verplanck* v. *Mercantile*

*Ins. Co.*, 2 Paige's Ch. R. 452. As a general rule, he can pay nothing without an order of court, nor can he make a dividend, in ordinary cases, without the special sanction of the court. The plaintiff here, however, contends that for his powers we are to look to the stipulation of the parties, on which he was appointed receiver. We do not doubt, the general powers of a receiver, may be restricted or enlarged by the parties at whose instance he is appointed, but he remains, nevertheless, an officer of the court. By reference to the stipulation in this case, it will be perceived that the plaintiff in error was appointed receiver for the purpose of taking possession of, and selling, the goods and chattels embraced in the several mortgages and deeds of trust then in litigation, the court to pass an order authorizing the sale of these goods and chattels, either together with the leases of the house and appurtenances known as " the McCardel House," as a whole, or separately from the leases, and either at public or private sale, as the receiver might deem most advantageous for all the parties concerned, and for cash or on short credit. The proceeds of the sale of the goods and chattels, after the payment of such liens as are undisputed, and such demands and liabilities against the " McCardel House," as it has been or may be necessary to incur and pay in order to keep the house in operation, shall be paid into the Cook County Court of Common Pleas, to abide such decision as the court might take in the premises. It was further stipulated, that the receiver be authorized to pay the mortgage debt and costs and expenses incurred, of Henry L. Wilson, the same to be deducted from the proceeds of the sale of said goods and chattels, before the same are paid into court. And it was also provided, that if it was deemed best to sell both the leases and goods and chattels as a whole, that the mortgage debt held by Ashley Gilbert, secretary of the Commercial Exchange Company, should be paid out of the proceeds of the sale, and not paid into court, if the same are sufficient. After making this stipulation, and agreeing upon a receiver, the complainant, Winston, presented a petition to the court, stating that the goods and chattels were designed for hotel keeping, and that it was the opinion of the parties interested, that they would sell to better advantage in conjunction with the leases. He states further in his petition, that a controversy had arisen between some of the mortgage creditors as to their respective rights under the mortgages, which it might require much time to adjudicate and settle, and that it would be most advantageous to sell the property at once, the proceeds applicable to such disputed claims to be held subject to the order of the court, and for that purpose it was prayed that a receiver

be appointed to take charge and dispose of the property according to the terms of the written stipulation, and under such further restrictions and directions as to the court might seem right and proper.

The order of the court following upon this petition and stipulation, was as follows:

" It is therefore ordered by the court, that Ezekiel R. Hooper be and he is hereby appointed receiver, to sell and dispose of said property in the proceedings in said cause mentioned, and to dispose of and appropriate the proceeds thereof, in the manner and upon the terms prescribed in the said written stipulation."

It is contended by the plaintiff in error, that under this stipulation and order of the court, he is not required to bring any of the proceeds of the sales into court, but can apply them, as he has done, in paying off the Wilson and Gilbert mortgages, and in keeping the McCardel House in operation until he sold it, and that he is not obliged to render any account of the expenses of that house, and that he alone was the judge of what was necessary to keep it in operation.

As to the Wilson mortgage, it will be seen that the receiver was allowed to pay it off out of the proceeds of the goods and chattels before they were paid into court. This we understand was on the condition that they were sold separately, and not in conjunction with the leases. If they were all sold together, then Gilbert's mortgage was to be paid out of the proceeds before they were paid into court. The fact being that they were held conjointly, then Gilbert's mortgage alone was to be paid out of the proceeds, and all beyond that brought into court. If this is not so, why was this distinction made in the stipulation? In order to do this, the receiver should have kept a separate account of the sale of the chattels and of the leases, but we see no such account on file. As, however, there are no cross-errors filed in the cause, the allowance of the payment of Wilson's mortgage cannot now be questioned.

As to these payments then, it was expressly stipulated that they should come out of the proceeds before they were paid into court.

The other claim set up by the receiver, to be allowed such expenses as he has chosen to set down, to keep the house in operation, we are constrained to say, we see no ground upon which to base it.

The receiver claims, that in this matter he was vested with a discretionary power, and therefore the court had no authority to examine into the mode or manner of its exercise; that he was

merely the private agent of these parties, that whole subject being left to his own judgment.

We do not deny that he had some discretion in this matter, but it was very limited. We hold, being an officer of the court, he should have applied to the court for leave to make these expenditures, and he is amenable to the court for the exercise of all his powers. As receiver and trustee for parties litigant, it was his manifest duty to have kept regular accounts, item by item, of all the expenses of the house, and of the receipts arising from it, and from all other sources from which money might have come into his possession. He should show an account current of the house, embracing therein, the stock he found on hand, the purchases of every description for the house, and the receipts of the house. That there were large receipts is unquestionable, yet no account has been rendered of any. That a bar furnished with more than fifteen hundred dollars worth of liquors should not, in Chicago, produce any returns, is incomprehensible. Failing to show any account current, every presumption ought to be against him, and for all his charges against the fund entrusted to his keeping, he should show satisfactory vouchers and proofs. He has shown none in the several reports he has made to the court. His judgment was not the limit of the expenditures, but the court, he being one of its officers, has a supervisory power over his acts, and he is amenable to its judgment as to the necessity of these expenditures, in order to keep the house in operation, and he is certainly accountable for the receipts.

The cases referred to by plaintiff's counsel are all cases of persons acting in a fiduciary character, and not by appointment of any court. With the exercise of the discretionary powers of such, courts will rarely interfere. But with its own officers it would be recreant to its duty, if it did not hold them to the strictest accountability.

So delicate is the position of a receiver appointed by a court, upon the selection of the parties in interest, that so far from being anxious to act, and incur liabilities, he is the reverse, and requires, sometimes, to prompt him to act, the spur of the court. His office is one of confidence wholly; his great object should be to prove himself worthy of it. His discretionary powers, as a general thing, are quite limited. He cannot bring an ejectment without leave of the court, nor lay out money in repairs at his discretion. If he does, it is referred, before an allowance, to a master, to ascertain if the repairs are reasonable. In the case of *The Attorney General* v. *Vigor*, 11 Vesey, 563, Lord Chancellor Eldon observed, that the court was not in the habit of

permitting receivers and committees to apply the trust fund in repairs, to any considerable extent, without a previous application. In the case of *Waters* v. *Taylor*, 15 Vesey, 25, which arose out of the management of an opera house, the same chancellor said, that the court would not, in the broad discharge of his duty, permit a receiver to lay out more than a very small sum at his discretion.

In the management of the McCardel House, although the receiver was required to keep it in operation until the sale, he had, as an officer of the court, but very little discretion allowed him, and should have applied to the court, by a brief petition, setting out the facts and asking for a reference, whether such and such expenditures would be for the benefit of the interested parties, and necessary to keep the house in operation, or for whatever other purpose the expenditure may have been desired. No single act, calculated to diminish seriously the fund, could the receiver do, on his own mere motion, and in the exercise of his discretion. The thing is unheard of, and the claim set up here to do so cannot be allowed. And he should have sold the property at the earliest practicable moment, so that keeping it in operation should not seriously have diminished the fund.

We are satisfied the plaintiff should be charged with interest, as he received interest on the sale, or might have done so. A receiver is liable to account and pay over the amount of any benefit or interest which he might make of the moneys in his hands. *Shaw* v. *Rhodes*, 2 Russel, 539.

The decree of the court below is affirmed.

*Decree affirmed.*