# CHARLESTON.

## BARNES *v.* BOYERS.

\*(HOLT, JUDGE, absent.)

Submitted June 7, 1890.—Decided December 3, 1890.

1. PRINCIPAL AND SURETY—PLEADING.

A plea drawn under sections 1 and 2 of chapter 101 of the Code, which authorize a security to notify the creditor to institute suit against the principal and provide, in default of his doing so in a reasonable time thereafter, that he shall forfeit his right of recovery against such surety, should aver not only the solvency of the principal at the time suit should have been instituted, but also that he then resided in this State.

2. PRINCIPAL AND SURETY—PARTNERS AND PARTNERSHIP.

Two partners executed a promissory note as follows: "$377.00. Palatine, W. Va., Mch. 27, 1877. Twelve months after date we promise to pay to the order of Thos. H. Barnes three hundred and seventy seven dollars, without interest, value received. BOYERS & HARDEN"—and subsequently dissolved, and the retiring member agreed with his late associate that the latter should retain the partnership property and pay the debts of the firm, and duly notified the common creditor of this agreement, and required him to bring suit as provided in sections 1 and 2 of chapter 101 of the Code; but the creditor never assented to the arrangement, and did not bring suit until the remaining partner had become insolvent, when he brought this action. *Held,* that such agreement between partners, so far as the common creditor was concerned, was *res inter alios acta,* and he retained unimpaired all of his rights and remedies against both partners as principals, and the said provisions in the Code for the relief of sureties do not apply to such a case.

*J. A. Haggerty* for plaintiff in error, cited :

20 W. Va. 657; 21 W. Va. 467; 67 N. Y. 95; Code (1887) c. 101, s. 1; 13 Johns. 174; 7 Am. Dec. 369, 370, 372; 6 Ark. 371; 42 Am. Dec. 696, 714, 715, n.; 1 Sto. Eq. Juris. §§ 321, 325, 475; 7 Johns. 332; 2 Johns. Ch'y 554; 66 Barb. 270; 17 Johns. 384; 8 Am. Dec. 415; 36, 37 Vic. ch. 66, sec. 25; DeCol. Law Guar. 323; 17 C. B. 201, 219; 43 Me. 381; 5 Leigh 153; 6 W. Va. 140; 62 Am. Dec. 728.

\*Case submitted before Judge Holt's appointment.

*U. N. Arnett, Jr.,* and *W. S. Haymond* for defendant in error, cited :

1 Phila. 233; 45 Am. Dec. 639 ; 34 Am. Rep. 578, n. 580; 3 Cal. 69; 24 Cal. 164; 2 Johns. Ch'y 562 ; 13 Johns. 175; 7 Am. Dec. 369 ; 2 Johns. Ch'y 554; 4 Hill 656 ; 5 Rob. Pr. 781-785; 29 Ohio St. 663 ; 24 Mo. 184; 3 Barr 404; 20 Ind. 504.

LUCAS, PRESIDENT :

This was an action of debt in usual form, brought by the plaintiff in the Circuit Court of Marion county, against the defendants, as late partners, doing business under the style of Boyers & Harden. There was a plea of payment, on which issue was joined. There was also a special plea filed, as follows :

"That the note upon which suit was brought was made by the said Boyers & Harden as a partnership, then doing business under the firm name of Boyers & Harden, for a debt of the said firm ; that after the giving of said note, and after its maturity, the said partnership was dissolved by agreement, by which, among other things, it was stipulated that the said John M. Harden should pay and fully discharge all the then existing debts and liabilities of the said firm or partnership of Boyers & Harden, including the said debt specified in the said promissory note on which suit was brought, of which the plaintiff had notice ; that after the said dissolution of the said partnership, and after a cause of action had accrued to the said plaintiff upon the said promissory note, and while the said John M. Harden, was entirely solvent and of sufficient means to have paid the whole amount of said promissory note, to wit, on the 7th day of July, 1880, the said defendant Boyers, your petitioner, gave due notice in writing to the said plaintiff, according to the form of the statute in such case provided and made, requiring the said plaintiff forthwith to institute suit upon said promissory note ; that the said plaintiff disregarded said notice in writing, and did not, nor would, either at that or at any other time during the solvency of the said John M. Harden, institute suit upon the said promissory note, but, on the contrary thereof wholly re-

fused so to do ; that afterwards the said John M. Harden became totally insolvent, and has ever since remained and now is totally insolvent."

This special plea was demurred to, but the demurrer was overruled, and issue was joined on the two pleas. In the progress of the trial the evidence offered by the defendant to sustain his plea was objected to, and the court rejected it, and the defendant excepted. No service of process was ever obtained upon Harden, and Barnes made his separate defence, as above set out.

The only question necessary to be considered in this case is whether the special plea constituted a good defence, for, if not, the demurrer should have been sustained, and the defendant was not injured by the exclusion of his testimony. The Code provides in section 1 and 2 of chapter 101 as follows :

"(1) The surety or guarantor or indorser (or his personal representative) of any person bound by any contract, may, if a right of action has accrued thereon, require the creditor or his personal representative, by notice in writing, forthwith to institute suit thereon ; and if he be bound in a bond with collateral conditions, or for the performance of some collateral undertaking, he shall also specify in such requisition the breach of the conditions or undertakings for which he requires suit to be brought."

"(2) If such creditor or his representative shall not, in a reasonable time after such requisition, institute suit against every party to such contract who is resident in this state, and not insolvent, and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety or his estate, and all his cosureties and their estates, the money due by any such contract for the payment of money, or the damage sustained by any breach of the collateral condition or undertaking specified as aforesaid ; but the conditions, rights, and remedies against the principal debtor shall remain unimpaired thereby."

It is obvious, that under the second section the plea should not only have stated that Harden was solvent, but that he was a resident of this State. But, independently

of this defect, it will be observed that all the rights and remedies against the principal debtor are carefully guarded in these sections, and are to remain unimpaired. And the question is whether both partners did not remain bound to creditors of the firm as principals notwithstanding the dissolution and agreement whereby, as between themselves, one of them became primarily liable, and the other took the position of his security. It is not in the power of joint debtors to change their relations to a common creditor, without his consent, and the plea does not allege that the plaintiff was ever consulted or ever consented to any such arrangement. In fact, he ignored the notices which were served upon him, as I think he had a right to do.

The case of *Johnson* v. *Young*, 20 W. Va. 614, which has been cited in support of a contrary doctrine, goes no further in the syllabus than to decide that where one of two partners purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, as to such debts the former becomes in equity the principal debtor, and the latter a surety. This annunciation must be taken in connection with the application to the actual facts of that case, which did not, in any manner, involve the question we are now discussing, as to whether the copartners can, by any private arrangement between themselves, change their relations, as principals, to the common creditor. It is true there are some expressions in the opinion (see Id. 657) which intimate such seeming concurrence in the doctrine contended for by the plaintiff in error; but, on the other hand, there is quoted, with approval, an extract from *Buchanan* v. *Clark*, 10 Gratt. 164, which states the correct doctrine in terse and unambiguous language, as follows: "As between the partners and the creditor, they were all equally bound; and no understanding and agreement between themselves could change that relation so as to impair his rights."

This is the doctrine of the early text-books, and it is the later English doctrine. Story lays it down thus: "In the first place, the dissolution of a partnership, whether it be by the voluntary act or will of the parties, or by the retirement of a partner, or by mere afflux of time, will not in

any manner change the rights of third persons as to any past contracts and transactions with or on account of the firm; but their obligation and efficacy and validity will remain the same, and be binding upon the partnership in the same manner, as if no dissolution had taken place." See Story, Partn. § 334.

Thus he states the general rule; and upon the particular illustration which we are now considering he is no less emphatic. "It frequently happens that, upon the retirement of one partner, the remaining partners undertake to pay the debt, and to secure the credits of the firm. This is a mere matter of private arrangement and agreement between the partners, and can in no respect be admitted to vary the rights of the existing creditors of the firm. But in all cases of this sort it may be stated as a general doctrine that, if the arrangement is made known to a creditor, and he assents to it, and by his subsequent acts or conduct or binding contract he agrees to consider the remaining partners as his exclusive debtors, he may lose all right and claims against the retiring partner, especially if the retiring partner will sustain a prejudice, and the creditor will receive a benefit, from such acts, conduct, or contract." Id. § 158.

So, also, Collyer says: "Of course, any arrangement between the partners themselves can not limit or prevent their ordinary responsibilities to third persons, unless the latter assent to such arrangement." 1 Colly. Partn. c. 17, § 407. Again he says: "In order that one liability may be replaced by another, by agreement, it is essential that the person in whom the correlative right resides should be a party to the agreement, or should, at all events, show by some act of his own that he accedes to the substitution. If A., being indebted to B., transfers his liability to C., and B. does not assent to the transfer, his rights are wholly unaffected; he will neither acquire any right against C., nor lose his former right against A. As regards B., the agreement between A. and C. is *res inter alios acta*, and it does not in any way benefit or prejudice him. But if B. assents to the arrangement come to between A. and C., and adopts C. as his debtor instead of A., then A.'s liability to B. is at an end, and B. must look for payment to C., and to him

alone. To apply this to cases of partnership, let it be sup-
posed that a firm of three members, A., B., and C., is in-
debted to D. ; that A. retires, and B. and C., either alone or
together with a new partner, E., take upon themselves the
liabilities of the old firm. D.'s right to obtain payment
from A. and B. and C. is not affected by the above arrange-
ment, and A. does not cease to be liable to him for the debt,
in question." 2 Colly. Partn. c. 24, § 596.

Mr. Parsons is, if possible, still more emphatic. He
says: "No dissolution of any kind affects the rights of
third parties who have had dealing with the partnership
without their consent. This is a universal rule, without
any exception whatever. Undoubtedly the partners may
agree as they please about their joint property, and all the
parts of it, and so they may about their joint obligations;
and all such agreements are valid, so far as they do not af-
fect the rights of strangers, but where they do, they are
wholly void. Thus three partners may agree today to dis-
solve and to divide all the property in a certain way, speci-
fying that one shall have this, another that, and the third
that thing. Or they make such an agreement about some
one or more things, and not about all. And these agree-
ments determine the property in these things effectually as
to the partners themselves. But they are all responsible *in
solido* for the debts due by the firm, and all the joint property
of the firm is just as liable for the joint debts after such divi-
sion or settlements among themselves as it was before. So,
too, it is very common for the partners to agree, not only
that one of them may settle and wind up the partnership
concern, but that one or more shall wind it up, and for that
purpose shall have in full property all the goods or funds
and business, or a certain part of them, and shall pay all the
debts, and this he undertakes to do. Such an agreement
is so far binding on the partners that, if either of the others
is obliged to pay a debt thus assumed by a partner, the
partner paying may have his action for the money against
the partner who undertook to pay ; but, so far as the credi-
tors are concerned, all the partners remain just as responsi-
ble to all the creditors after such an agreement as they were
before." Pars. Partn. (3d Ed.) 428.

It is very true that notwithstanding the unanimity of the text-books upon this subject, some very respectable decisions are to be found, both in England and the United States, which hold otherwise, and decide that, when once the retiring partner has brought to the notice of a creditor the fact that the remaining member has received all the assets and undertaken to pay the debts, such creditor is bound to recognize the new relation of principal and surety existing by operation of law; and if requested by the retiring partner to collect his claims, and he refuses or neglects so to do, if at the time of the request the principal was solvent and able to pay, but thereafter becomes insolvent, the retiring partner is discharged. Perhaps the leading American case which thus holds is *Colgrove* v. *Tallman,* 67 N. Y. 95. That case is fortified by, if not founded directly upon, the English case of *Oakeley* v. *Pasheller,* 10 Bligh, (N. S.) 548, in which the opinion was delivered by Lord LYNDHURST. But this case (*Oakeley* v. *Pasheller*) has been much shaken, if not entirely overruled, by the more recent English decisions. According to the statement of the case in the recent and able work on Partnership by Mr. Bates, that case (*Oakeley* v. *Pasheller*) is the very reverse of *Miller* v. *Miller,* decided by this Court in 1875, and reported in 8 W. Va. 542, and the latter case is binding upon us, while the old English case (1836) would only be persuasive. The whole array of authorities, both English and American, upon both sides of the question, are collated by Mr. Bates, who himself evidently inclines to the sounder opinion, supported, as it is, as I have shown, by all of the older text-writers. 1 Bates, Partn. §§ 533, 534.

Having concluded, for the reasons stated, that the special plea was bad, the Circuit Court erred in not sustaining the demurrer to it, but did not err in rejecting all the evidence tending to support it, and the judgment must therefore be affirmed.

AFFIRMED.