## CHARLESTON.

### McCoy v Jack.

Submitted June 22, 1899—Decided December 2, 1899.

1. PARTNERSHIP DEBTS—*Equity*.
   If partners give a bond, each signing only as individuals, but it is in fact for a partnership debt, though at law it is an individual debt, yet in equity it is treated as a partnership debt. (v. 202).

2. DISSOLUTION OF FIRM—*Creditors*.
   Though partners dissolve, one of them assuming the debts, and this is known to a creditor, yet the creditor retains still the right to treat all the partners as principals, not as sureties, unless such creditor agrees to look only to the one assuming the debts. (p. 203).

3. ADMINISTRATOR'S LIABILITY—*Time of Payment*.
   An administrator cannot pay, within twelve months after his qualification, one debt in full, or in excess of its ratable share of assets, over another of the same class, either with or without notice of such other debt; and, if he does, he is personally liable to the omitted debt for its share of money applied in such payment. If such payment be made after twelve months, he is not liable, unless he had notice of the other debt. (p. 205).

Appeal from Circuit Court, Gilmer County.
Bill by John C. McCoy against W. H. Jack and others. Decree for complainant, and defendant Jack appeals.

*Affirmed.*

JAMES B. FOWLER and R. F. KIDD, for appellant.
LINN & WITHERS, and DULIN & HALL, for appellee.

BRANNON, JUDGE:

McCoy brought a suit in chancery in the circuit court of Gilmer County against Jack, as administrator of Corley and in his own right, to convene the creditors of Corley's estate, to enforce a judgment in favor of McCoy against Corley and others, rendered in Corley's lifetime, and sub-

ject assets of Corley's estate to his debts, and to set aside
as fraudulent as to McCoy's debt a conveyance from Corley
to Jack for a lot in Cedarville, and subject it to the debts.
McCoy's judgment was against Corley, Ross, Dyer, and
Tomkins upon a bond for one thousand dollars, given by
them as individuals; but it was shown that it was for
goods purchased of John O. McCoy & Sons by Corley &
Ross, partners, Dyer signing as surety.   This firm of Cor-
ley & Ross was dissolved afterwards, Ross agreeing to pay
its debts; a fact known to McCoy, but about which he was
not consulted, and in which he took no part.   Jack, as ad-
ministrator of Corley, paid some debts in full, and McCoy
claimed that he was personally liable to him for his debts'
ratable share of the assets of Corley used in their pay-
ment, Corley being insolvent, his assets being sixty-five
dollars and a life policy of one thousand dollars.   Dyer, as
surety, paid some on the McCoy debt, and claimed substi-
tution to McCoy's rights against Corley's estate.   A
decree held Corley's estate liable for McCoy's debt, cancel-
ed the deed from Corley to Jack, and subjected the lot to
McCoy's debt, and held Jack liable personally for McCoy's
share of the money, which he had applied to pay certain
debts in full, and gave Dyer substitution for what he had
paid.   Dyer gave notice to McCoy to sue, when Tomkins
agreed to go on the bond to avoid suit in consideration that
no suit be brought, and Dyer withdrew his notice to sue.
It seems Corley knew nothing of this.   Jack, as adminis-
trator and in his own right, appealed.

   Is Corley a surety of Ross or a co-principal with him?
The consideration inuring to the benefit of Corley and
Ross, the bond is treated in argument as one of the firm
though it bears no sign of firm liability, it being a plain,
individual bond.   A query came to me whether it could be
treated as a firm debt.   T. Pars. Partn. § 141, says that
such a note is not a partnership note, and has not that
effect.   For some purposes, even in equity, it may not have,
but, while an individual debt at law, if shown in equity to
be in fact a partnership debt, it is so treated.   1 Bates.
Partn. §§ 452, 453; *Woolen Co.* v. *Juillard*, 31 Am. Rep.
488.   The question is not material in the decision of this
case, as in both views Corley is a principal; only it may

add strength to the claim of McCoy that, as to him, Corley is a principal in fact and in form of contract.

It is contended, to relieve Corley of liability, that, as the firm was dissolved, and Ross assumed all firm liabilities, McCoy knowing this, the relations of the parties changed, in this: that afterwards Corley was only a surety for Ross, not only as between him and Ross, but as between him and the creditor McCoy; and that, when McCoy gave further indulgence for payment, without consent of Corley, Corley was released. As will be seen in the case of *Johnson* v. *Young*, 20 W. Va., 657, some cases hold that on such a state of facts the retiring partner is thereafter a surety, and a creditor would have to so treat him, as, for instance, to recognize his demand for suit against his former partner, or not to extend time for payment. But in *Barnes* v. *Boyer*, 34 W. Va. 303, (12 S. E. 708), that doctrine is not followed, but it is held that on such dissolution and agreement of one to pay debts, though the creditor know of this arrangement, "he retains unimpaired all the rights and remedies against both parties as principals, as before dissolution." I cannot see why the clear vested right of the creditor to hold both parties liable as principals can be destroyed by the mere act of the partners, unless he not merely knows of the arrangement, but agrees thereafter to treat the one as principal, the other as surety. The able, clear opinion of Judge Lucas in that case tells me there is no necessity of my pursuing the subject further. Corley being a principal, it is not necessary to discuss the worn question of the sufficiency of the indulgence to release Corley if he had been a surety.

It is plain that the court did not err in holding the lot in Cedarville liable for McCoy's debt. A conveyance of it was made by Jack to Corley. The deed gives the consideration as "one dollar and other valuables in hand paid." Jack says that, as Corley had rendered faithful service as a clerk in his store, he conveyed the lot to Corley, without his knowledge, as a recognition of past faithfulness, and a stimulus to like service in the future. On this Jack would erect a trust by which Corley should hold the lot for Jack's use, and thus, not being Corley's property, it would not be liable for his debt; but the reply is that no

such consideration is expressed in the deed, and, if it were, it would work no result, since, treating it as only a gift, Jack could not revoke it, and recall the full title and ownership conferred by the deed. No express trust is claimed. Corley accepted this conveyance. Being thus owner, Corley, on the very day when the writ was served upon him in the action for this debt, which would destroy him financially, conveyed the lot back to Jack, falsely stating the consideration as four hundred and seventy-five dollars, when Jack says he paid nothing, and Jack did not know of the execution of the deed for some time afterwards, and had no contract for its conveyance, and Corley took the deed to the office for record, and requested the clerk to note the hour of its admission to record, and paid the fee. Jack was the friend of Corley, close and trusted; Corley being his store clerk. Of course, this act was only that of Corley to screen his property from McCoy, and the decree properly subjected it to McCoy's debt. If we say Jack did not know of the debt, and was guilty of no fraud, he cannot hold the lot for nothing. The conveyance was voluntary.

It is assigned as error that the decree erred in giving Dyer substitution to the rights of McCoy for money Dyer paid to McCoy on the debt. How error? Nobody denies that Dyer was Corley's surety, and paid money for him. The theory is that Dyer notified McCoy to sue on the bond, when Tomkins, as the friend of Ross, agreed to sign the bond if Dyer would recall his notice to sue, which he did, McCoy agreeing to indulge; and that, therefore, Dyer must look alone to Ross and Tomkins, not to Corley, his principal. I cannot discern how the coming in of this new surety could destroy Dyers' right to look to Corley for his indemnity.

There is nothing in the point that McCoy must first get his money from Dyer and Tomkins before going against Corley's estate. The converse is true: that he should first exhaust the estate of the principal before going upon Dyer and Tomkins, who are only sureties of Corley.

Objection is made to the decree because it holds that Jack, as administrator, could not pay certain debts in full, leaving McCoys' debt to go unpaid; but that it was entitled

to its share of assets so used. At common law the administrator could prefer one debt over another of the same class, if none have sued. 1 Lomax, Ex'rs, 407. But long ago, in Virginia, a statute changed this by requiring application of assets to demands in prescribed order, denying the right to pay a debt of one order before another of higher order, and provided that, after debts of the United States government, taxes, and fiduciary debts, all other demands, save voluntary ones, shall be paid ratably. *Id*. 411; Code, c. 85, ss. 25, 26. The Code says that, if the administrator, after twelve months from the qualification, pays a debt, he shall not be liable for any other debt unpaid, unless he has notice of it. The common law was that he was not liable for paying out of order unless he had notice of the unpaid debt, but this provision changes that rule, and makes the administrator liable if he pays within twelve months, notice or not. If he does so within that time, he acts at his peril. After that the common law rule operates. He is then only liable if he has notice. Jack paid these debts in full within twelve months, and was properly held liable to this debt for its *pro rata* share. The evidence shows he had notice of this debt before such payments, if that were material.

*Affirmed.*

Note by BRANNON, Judge. There is no foundation to say that, when the firm was dissolved, and Ross agreed to pay its debts, McCoy assented to look only to Ross. Therefore, plainly, under *Barnes* v. *Boyers*, 34 W. Va. 303, (12 S. E. 708), Corley remained a principal debtor to McCoy. The note was dated 1st of March, 1888, payable two years after date. The firm of Corley & Ross was dissolved August 29th, 1888. In March, 1891,—nearly three years after that dissolution,—Tompkins signed the note as additional surety. The proposition, then, in defense of Corley, must be that the taking of Tomkins as additional surety operates to release a principal debtor, Corley. That is the proposition simply. I need cite no law that such act would not alone work such release. It could not hurt Corley. Extension of time would not release him, because he was not a surety. Such a release as that mentioned, based on the mere taking of an additional surety, is not made in the pleadings, the whole theory in the pleadings being that Corley became surety under the assumption by Ross of the partnership debts. So, if there were proof that when McCoy accepted Tomkins as additional surety, he agreed to release Cor-

ley, such release would not operate for want of a pleading. But there is no proof that McCoy agreed to release Corley. He flatly denied it, and it is not proven. Moreover, if McCoy had so agreed, would there be any consideration going from Corley to bind Jack? It was simply another man signing the old note as surety, at Dyer's request, to allay his fear of loss from his suretyship. If the intent was to end the old note, or release any party on it, why did they not make a new note? Then it would have been a surrender and prima facie release of the old note. *Bank* v. *Good*, 21 W. Va. 455; *Hess* v. *Dille*, 23 W. Va. 90. But there was no surrender. of the old note. Jack still held it. That is strong to show there was no design to release. It was simply the signing of the old note by an additional surety. That is all there is of it.