# CHARLESTON.

### HAZELTINE *v.* KEENAN.

Submitted September 9, 1903—Decided February 9, 1904.

1. NOTE—*Payee—Sale—Notice.*
   A negotiable note is payable on its face to a payee with the word "attorney" suffixed to his name, and he endorsed it to a party suffixing his own name "attorney" in his signature to the endorsement. The note is owned by the payee and other parties. The word "attorney" indicates an interest in such other parties, and puts the purchaser upon inquiry as to their rights and the right of the payee to sell the note. (p. 603).

2. ATTORNEY'S LIEN.
   An attorney's charging lien for his fee is confined to the judgment or fund recovered by him as attorney; his retaining lien on papers of his client for fees due him for general services depends on his possession of such papers, and ceases when he voluntarily parts with possession of them. (p. 605).

Appeal from Circuit Court, Randolph County.

Petition by D. D. Hazeltine against L. H. Keenan and others. Decree for plaintiff, and certain defendants appeal.

*Affirmed.*

SCOTT, COBB & MAXWELL, for appellants.

HARDING & HARDING and W. B. MAXWELL, for appellee.

BRANNON, JUDGE:

Hazeltine, L. H. Keenan and Wilson together effected a sale to Patterson of some timber belonging to Caplinger, the price being $2.500, of which $2,000 was paid Caplinger by Patterson, and $500 was profit to Hazeltine, Keenan and Wilson, and for this balance Patterson made two promisary notes, one for $200, and one for $300, purporting to be negotiable, payable on their faces to "L. H. Keenan, attorney." Before maturity of the notes L. H. Keenan transferred one of them to his father, by an endorsement reading, "Transferred the within note to Thomas G. Keenan, L. H. Keenan, Atty"; and the other he transferred to his brother by similar endorsement. Judgments were obtained on them in the names of indorsees against Patterson, and in two cases of *Ward and Brown, trustees,* v. *Patterson,* and *Nalle* v. *Patterson,* in Randolph, a joint decree was rendered subjecting property to the payment of Patterson's debts. These judgments were decreed to be paid to said indorsees out of a fund in the hands of a trustee realized by a sale of Pattersons property under the decree. After this decree Hazeltine filed what is styled a petition in the case claiming that he was owner of one third of the debt represented by said notes, and that their transfer by L. H. Keenan to his father and brother was invalid and made to defraud said Hazeltine; that nothing was paid for such transfers, and at their date said endorsees well knew that the notes were not the property of L. H. Keenan, as their faces imported that they were the property of *o*ther parties and only executed to Keenan as attorney. The petition asked that Hazeltine be paid out of the fund in the hands of the trustee under the control of the court one third of said notes. A decree was made giving Hazeltine one third of the amount of said notes, and from it T. J. Keenan and T. G. Keenan appeal.

The right of Hazeltine to one third of the debt represented by the notes is clearly established by the evidence, as the circuit court found on the evidence. It is scarcely contested here. But appellants contended that they are *bona fide* holders for value of negotiable paper, and no matter if Hazeltine had an

interest in the notes, it is not good against them.´ The notes are payable to Keenan as attorney, and so they were endorsed by him. Does the word "attorney" detract from their negotiability? If it derogates from their currency or negotiability; if one buying them is by that word warned of rights of others, and is put on notice of their rights, and therefore cannot say he is a holder without notice of defect of right in the endorser, then the notes cannot be negotiable. In Third Nat. *Bank* v. *Lange,* 51 Md. 138, 34 Am. R. 304, a note payable to the order of one as "trustee" was held not negotiable. The Court said the trustee restricted its free circulation. But whether negotiable or not, the authorities say that when the word "trustee", "guardian" or any word suggesting rights in others is upon a note, it puts a purchaser on inquiry, and he purchases subject to the just rights of others, and does not hold the place of an innocent purchaser. In the case just cited the court said: "In the case of the present note it cannot be read understandingly without seeing upon its face that it is connected with a trust and is part of a trust fund. It was the duty of the bank before purchasing it to have made inquiry into the right of the trustee to dispose of it," and quoted from Story's Eq. section 400, "Whatever is sufficient to put a party on inquiry is in equity held to be good notice to bind him." In *Shaw* v. *Spencer,* 100 Mass. 382, 1 Am. R. 115, a stock certificate was in the name of one as "trustee". The court said: "The rules of law are presumed to be known by all men; and they must govern themselves acordingly. The law holds that the insertion of the word 'trustee' after the name of stockholder does not indicate and give notice of a trust" "Express notice is not indispensable. There may be evidence of the infirmity of the paper apparent on its face, or such indications as put the purchaser on inquiry." 1 Dan. Nego. Instm. section 795a. In section 271 that author says that the better opinion is that though a fiduciary may pass good title, if the transfer is in execution of the trust, yet if there is suffixed to the payees name "such words as 'trustee' etc. they put the indorsee upon inquiry as to the title, and if the transfer be in fraud of the trust, the indorsee must suffer the consequenses."

The words, "Agt. Glass Buildings," added to a signature to a check are enough to put one receiving it in payment on in-

quiry as to the signer's authority to use the fund to pay his debt. *Gerard* v. *McCormick,* 14 L. R. A. 234. If the word "trustee" is on the face of the note, that compels the purchaser's "ascertaining whether the trustee has power to sell." *Bank* v. *Lowney,* 99 Tenn. 278, 63 Am. St. R. 830. The word "trustee" is notice of a trust and calls for inquiry and examination. *Marbury* v. *Ehlen,* 72 Md. 206, 20 Am. St. R. 467, and note. An endorsement by "A, B, syndic" put the purchaser upon notice. *Nicholson* v. *Chapman,* 1 La. Ann. 222, cited in 2 Randolph, Commercial Paper, section 1010, 1012, under the proposition that "where paper is held by a trustee or guardian, and this appears on its face, it will put the purchaser on inquiry as to the authority and title of such officer." "The fact that the instrument on its face is made payable to a person in his fiduciary capacity is notice that the payee is acting in such capacity, and that he can only give title or deal with such instrument for the benefit of the person · whom he represents." Eat. & Gilb. on Commercial Paper, section 75 clause d, p 370. "Where a bill or note is endorsed by a person in an official capacity, as guardian, syndic, or trustee, the purchaser is put upon inquiry." 4 Am. & Eng. Ency. L., 2nd ed., 305. An attorney, at law or in fact is but an agent. He cannot sell his client's paper, especially, as did the party in this case, for his own private use. 3 Am. Eng. Enc. L. 369. The party might collect from the debtor, but not sell. An objection is made to the decree because the petition was filed after final decree, too late to file a petition or a bill of review. Of course, it is not a bill of review, as it is not filed by a party, and does not seek a reversal for law error or on new evidence. No matter what it calls itself. We look to its matter. The fund was in court. Is it possible that one claiming an interest in it could not petition the court to give it to him according to his right? How else could he get it? The fact that the fund was in court justifies what is usually termed a petition, because it is an application to the court. In so far as the interests of the defendants are concerned, they were made parties, given right to defend, and we may call it an original bill to overthrow or modify their rights under the decree. If it were to rehear on the same matters, a stranger can come in by petition and ask a rehearing. *Heermans* v. *Montague,* (Va).

20 S. E. 899. But as it is on matter not in the record I regard it a bill to affect the decree, an original bill to impeach or change a decree, and not too late.

As to the point that the decree does not fix out of which note Hazeltine should be paid. What has he to do with that? Both notes made one solid debt as to him, in which he had an undivided share. He had right to payment out of the fund regardless of rights of appellants as between themselves. He did not have to settle their equities. Moreover, the endorsements of the two notes seem contemporaneous.

I will add, as pertinent to what is said, a few lines back, as to the contention that a petition does not lie in this case because the decree is final, that the fund is in court subject to its control. The design of Hazeltine is not to complain of the matters involved in the suit and the decree on them, but merely to vary the decree as to the disposition of that fund, and he intervenes only to say that he has a share though decreed in the name of Keenan, and begs the court to vary the decree as to the disposition of that fund. The Virginia case cited above is ample authority to justify the petition; but I will add that Story's Eq. sections 429, 430, allows a bill not only to enforce a decree already rendered, but to modify or vary it.

Keenan claims that Hazeltine agreed that the latter's share in this Patterson deal, so called in the case, should be applied to pay fees to Keenan as attorney in litigation of a firm called Hazeltine & Hall and, perhaps, some litigation of Hazeltine individually. In the first place, whilst Keenan so swears, Hazeltine swears to just the opposite, and the circuit court has passed its verdict on conflicting evidence, and we cannot overrule that verdict. In the second place, and this is very important, Keenan's claims for such fees are of the most general, indefinite character. He files no specification to say what cases they were in which such fees arose; what cases were those of Hazeltine & Hall, what cases were those of Hazeltine alone, nor what were his fees in such cases, respectively. How can the court see whether Hazeltine's share in this case equals, is less, or greater than those fees? True, Keenan swears that Hazeltine agreed to apply his share on these fees, and that fees would be still left unpaid; but this is a general, indefinite statement. In the third place Keenan wants to charge Hazeltine individually with fees against

a firm. They would not be chargeable, as a set-off, without express agreement. The burden of proof for this is heavy on Keenan, and the evidence of man against man defeats it. It has been suggested that without evidence the law itself gives Keenan a lien for those attorney fees upon the fund. This lien cannot be supported. It cannot be what is called a charging lien, because the notes constituting the fund were not recovered in a suit by Keenan, and for this reason he has no charging lien. *Fowler* v. *Lewis,* 36 W. Va. 113. But it is claimed that Keenan has another kind of lien as attorney, that is, a retaining lien, to secure all and any attorney's fees in any cases. To this a definite answer is given by Jones on Liens, section 128: "This lien is lost by the attorneys voluntary surrender of the papers to his client; for possession is indespensable to the lien. The lien is lost when the attorney has parted with the possession of the papers by his own act, even though this was a mistake on his part." This retaining lien is like the common law lien discussed in *Burough* v. *Ely,* 54 W. Va. 118, of a sawyer on lumber sawed by him. The very life of the lien depends on the continued retention of the article, because the lien is in terms and nature a thing fastening itself on the very thing itself. In this case Keenan, by his own voluntary act, transferred these notes and, gave up possession of them.

Therefore, we affirm the decree of the circuit court.

*Affirmed.*

DENT, JUDGE, (*dissenting*) :

L. H. Keenan *et al* appeal from a decree of the circuit court of Randolph county in favor of D. D. Hazeltine for the sum of $195.25 and costs on a petition filed by him in the chancery cause of *Ward, trustee, et al.* v. *M. M Patterson et al.* The petition was filed after final decree and sets out that the petitioner is entitled to one-third of the proceeds of two certain negotiable notes executed by M. M. Patterson to L. H. Keenan, attorney, and asigned by him to his father and brother, J. P. and L. H. Keenan in violation of petitioner's rights and without his knowledge and consent, for the purpose of defrauding him; that the asignees had taken a decree for the full amount of the notes, and prayed, that he might be decreed the one-third thereof

and also $30.00 additional which one P. L. Wilson had left in L. H. Keenan's hands for the benefit of petitioner. The Keenans appeared, demurred and filed their answers to the petition in which they denied the fraud charged, and claimed the transaction was in good faith, with the knowledge and asent of the petitioner who no longer had any interest in the notes, as he had consented that L. H. Keenan should apply the proceeds when collected on attorney's fees owed by the petitioner individually, and as a member of the firms of Hazeltine & Hall and Hazeltine & Erb, both of which firms and the petitioner were insolvent and the amount due being in excess of the amount claimed by Hazeltine, could not be realized otherwise than out of the same. The demurrer to the petition was overruled. This is alleged as error. First, because the petition was filed after a final decree ending the suit. Second, because of ample remedy at law. As the fund was still under the control of the court even after final decree, any claimant thereof not a party to the original suit had the right to intervene by petition for the purpose of settling the true right to the same. *B & O. R. R. Co.* v. *Vanderwerker,* 33 W. Va. 191 (10 S. E. 289). The petition sets up a right to the fund, but it does not make out a clear case of attempted fraud. It admits that L. H. Keenan was entitled to receive the fund as an attorney, and it does not alleged he was either insolvent or irresponsible, but leaves these matters to be inferred from the allegation of fraud. If disposed to be technical, the court might well hold that petitioner's remedy at law was full and adequate. The failure of an attorney to pay over money collected by him is a matter of legal and not equitable jurisdiction, and there can be no breach of trust on the part of an attorney authorized to collect a fund until he has actually received it, and refused to pay on demand, or within six months after receipt thereof, without good and sufficient reason. Section 11, chapter 119, Code.

Waiving this question and passing on to the merits of the controversy, it appears from the evidence, which is somewhat conflicting that the fraud charged in the petition is wholly without foundation; that Hazeltine knew of the assignment of the notes made by L. H. Keenan, and was present without making objecting thereto, when the assignees obtained judgments on the notes; that Hazeltine & Erb and Hazeltine & Hall were in-

debted to L. H. Keenan for legal services rendered in an unsettled amount, which Keenan claims will much more than cover the amount in controversy; that Hazeltine individually was under obligation to pay these fees, and that Hazeltine and both the firms were insolvent. It is true that Hazeltine claims he is able and willing to pay these fees when properly ascertained, yet when interrogated as to the solvency of the firms, which necessarily involves the solvency of the individuals thereof, he refuses to answer. The proof otherwise in the case undoubtedly establishes insolvency. Partnership debts are both joint and several, and the individual partner and his property is liable for the payment thereof. *Lee* v. *Hassett,* 41 W. Va. 379 (23 S. E. 559) ; 2 Tuck. Bl. Com. 141; *Courson* v. *Parker,* 39 W. Va. 524 (20 S. E. 583). Such being the case, L. H. Keenan without even the asent of Hazeltine had a lien on the notes in controversy as long as they were in his possession and control, to secure the payment of attorney's fees owed by Hazeltine individually or as a partner with some one else, as all partnership obligations are both joint and several. *McCoy* v. *Jack,* 47 W. Va. 201 (34 S. E. 991) ; 3 Am. & En. En. Law (2 Ed), 454. A court of equity will not interfere to deprive an attorney of such lien, especially when the client has consented that the attorney should collect and disburse the proceeds of such notes and when he would have the right to apply such proceeds to the payment of his fees. The notes though assigned are shown to be still under the control and in custody of Keenan.

The petition in this case is in the nature of a bill for specific execution of a verbal arrangement regarding the pecuniary transaction, and the petitioner having failed to show fraud, insolvency or any other just cause for equitable interference, but it appearing that there exists a doubtful controversy as to the ownership of the fund the parties should be remitted to their legal remedies. The only real question in controversy between the parties is the determination of the amount of the attorney's fees, and there appears to be a suit already pending for this purpose.

The decree should therefore, be reversed and the petition dismissed without prejudice to the legal rights of the parties.