# CHARLESTON.

### BAYS v. JOHNSON *et al.*

Submitted May 1, 1917.  Decided May 15, 1917.

1. PARTNERSHIP—*Dissolution—Liability of Retiring Partner.*
    The dissolution of a copartnership by the retirement of a member thereof does not *ipso facto* discharge him from liability for the pre-existing debts of the firm.  (p. 561).

2. SAME—*Liability of Retiring Partner—Release.*
    An express agreement to release the retiring partner from such indebtedness, to be effectual, must be based upon a valuable consideration.  (p. 562).

3. SAME—*Liability of Retiring Partner—Discharge.*
    The mere assumption of the indebtedness by the partner continuing the business of the concern after the dissolution, and the creditor's assent thereto, without an express or implied agreement by him to rely exclusively upon the credit of such partner, do not work a discharge of the retiring partner from the joint obligation.  (p. 562).

4. SAME—*Dissolution—Liability of Retiring Partner—Discharge.*
    To exonerate a retiring partner from a firm debt contracted be-

fore the dissolution, the facts and circumstances out of which arises an implied release or discharge must be established by clear and convincing proof, certainly where the creditor theretofore expressly refused to agree to such exoneration.　(p. 563).

5.　SAME—*Liability of Retiring Partner—Declarations of Creditor—Construction.*

The declarations of a creditor, when relied on as effecting an exoneration of the retiring partner from the joint liability, are to be interpreted and construed in the light of his previous refusal and of the circumstances under which the declarations were made.　(p. 563).

6.　SAME—*Liability of Retiring Partner—Exoneration—Proof.*

To warrant such exoneration by implication, the facts and circumstances manifesting an intention to effect that result must, to avail, be established by clear, positive and adequate proof.　(p. 563).

Error to Circuit Court, Nicholas County.

Assumpsit by E. M. Bays against R. M. Johnson and W. C. Barnes, as partners, etc.　Judgment against defendant Johnson with judgment for defendant Barnes for costs, and plaintiff brings error.

*Reversed, verdict set aside, new trial granted.*

*G. G. Duff, H. C. Hill* and *Fred O. Blue,* for plaintiff in error.

*W. F. Frame,* for defendants in error.

LYNCH, PRESIDENT:

To recover against R. M. Johnson and W. C. Barnes a balance alleged to be due on a contract of sale to them as partners of timber to be manufactured into staves, ties and other articles of trade, plaintiff at December rules, 1913, brought assumpsit, and against Johnson only obtained judgment for an amount less than that claimed in the declaration, and Barnes recovered a judgment for costs against plaintiff, who brings the case here for review.

One hundred dollars of the consideration for the timber was paid equally by the defendants, who united in two notes for the residue, one for $900 and the other for $1000, upon a stipulation for partial payments when and as quantities of

headings, staves and ties in carload lots were prepared for market, with the provision that no shipments were to be made until the ratable value thereof was paid. as a credit on the amount due the vendor.

Barnes sought and by the verdict was permitted to escape liability upon the partnership transaction, on the ground that he and Johnson, with the knowledge and assent of the plaintiff, terminated the partnership relation a short time after the contract of purchase was entered into, and that the dealings between the plaintiff and Johnson after the dissolution were such as effected the release of Barnes from the contract obligation.

. The severance caused by the retirement of Barnes from the partnership, the continuance of Johnson in the performance of the contract, with the acquiescence of the plaintiff, the dealings between him and Bays as to the partial discharge of the contract and payment of the consideration by the issuance and acceptance of checks, a settlement by them of the accounts arising out of these transactions in the absence of Barnes and without notice to him, and declarations by the plaintiff to Johnson and others than Barnes to the effect that Barnes was discharged from liability for the contract price of the timber, were relied on at the trial to relieve Barnes from the joint debt, and doubtless, under the instructions given, had that effect. All the checks given and accepted were paid promptly, except the last one for $962.65, and it remains unpaid. It was protested for want of funds to the credit of Johnson in the bank on which it was drawn.

The plea in virtue of which proof as to these facts was admitted over objection simply averred that Barnes was not a member of the partnership when the last check was given and the action brought. This plea did not present an issuable or material fact; because, conceding the facts to be as pleaded, they did not discharge or exonerate Barnes from the payment of the joint liability. The authorities uniformly hold that the dissolution of a copartnership does not *ipso facto* release a partner from payment of a debt contracted by the firm before his retirement. *Burdette* v. *Greer,* 63 W. Va. 515, 15

L. R. A. (N. S.) 1019 and notes; *Barnes* v. *Boyers,* 34 W. Va. 303.

Moreover, although the facts pleaded were proved, they are insufficient to operate as a discharge; because. it is not averred or proved that the plaintiff for any consideration deemed valuable expressly agreed to release or discharge Barnes from payment of the partnership debt. An express agreement to release a pre-existing debt or contract, to be effectual and binding, must be founded upon a valuable consideration. *Lumber Co.* v. *Friedman,* 64 W. Va. 151, 159; *McConnell* v. *Hewes,* 50 W. Va. 33, 39. But it appears conclusively and unequivocally, indeed without the semblance of contradiction or controversy, that Bays, although repeatedly requested, persistently refused to consent to exonerate Barnes from the debt incurred by him and his partner. The defendants agree that when applied to for the purpose Bays refused to consent to the release, indeed even to consider the proposal. They say he would not even look at the paper purporting to be a written release. Plaintiff says he declined to entertain the proposition, and did nothing intended to effect that result. So that apparently there was not an express agreement for such a release, or any agreement having that object in view.

In the face of this unquestioned and conclusive proof of an emphatic declination even to treat with the defendants on that subject, it is argued that the acts and conduct of the plaintiff in dealing with Johnson, the acceptance and collection of his checks except the one in controversy, and the delivery to him of the joint note for $900 upon the acceptance of the check subsequently protested, together worked an implied release of the copartner. But the assumption is not at all likely or reasonable that plaintiff intended by implication to do what he unequivocally declined to do upon the application of the interested parties. If Bays intended to look to Johnson only for payment of the consideration, and not to him and Barnes jointly, he doubtless would have signed the agreement to that effect when presented for his signature. Why he should do indirectly what he persistently declined to do expressly seems not to be within the region of reason.

What are the facts relied on from which it is argued arises the inference wholly inconsistent with the positive refusal so to imperil recovery under the original contract? They are statements said to have been made by the plaintiff to Johnson alone, or to him and others than Barnes alone or jointly during negotiations between them for the sale of the timber purchased but not severed from the land, or declarations that Johnson assumed to pay and had paid plaintiff all that was due him under the contract of sale, and that Barnes need not feel any anxiety as to his liability under the contract for the same reason. If these conversations occurred, the statements were made between the date Johnson delivered the last check to the plaintiff in July and October 12, the date agreed upon for its presentation at the bank for payment. The declarations could not have been made earlier than July or later than October 12. They could not be true, if made either before the first or after the second date. The balance for which that check was given was not ascertained until in July; and certainly plaintiff would not admit the discharge of any security he had for the joint liability after the protest of the check. This proposition hardly bears the impress of business sagacity or acumen. These statements, interpreted in the light reflected by the circumstances surrounding the transaction, readily can be explained only upon the assumption that, as Johnson had promptly paid all other checks given for the same purchase when and as presented to the bank on which they were drawn, plaintiff evidently acted upon the belief that Johnson would not suffer the dishonor of the last check issued by him. And no doubt it was upon this supposition, one not at all unreasonable, that Bays predicated the statement that he had no further claim against the timber men.

But, to constitute an express waiver or release of a vested right, the agreement therefor must, as we have said, rest on a valuable consideration. If implied, the facts and circumstances out of which the implication arises must clearly and sufficiently be proved, the burden resting on him who asserts a waiver. *Lumber Co.* v. *Friedman, supra.* The conduct and declarations imputed to plaintiff he was not permitted to deny

or explain—on what theory, principle or doctrine is not ap-
parent. Surely that right was denied him erroneously. Each
party to a controversy certainly is entitled to give his version
or explanation of a transaction had between them, when it is
the subject matter of investigation directly or indirectly,
Besides, ''no voluntary declaration by a creditor of an inten-
tion to release a debtor, unless accompanied by some act
which amounts to release at law, will work an equitable re-
lease''. Beach on Contracts, §470. A promise by a partner
already bound by a partnership note to discharge the debt
is no consideration for an agreement to release the other part-
ner. Page on Contracts, § 316.

The acceptance by a creditor of a check or note, or of one
executed by the same obligors in renewal of an overdue note
given for the same debt, and the surrender of the original
evidence of the liability, do not of themselves justify the pre-
sumption of an intention on the part of the creditor to re-
linquish any right he had to enforce the payment of the orig-
inal obligation, in the absence of an express agreement based
upon a valuable consideration, or in the absence of clear and
conclusive proof of facts and circumstances of such probative
force and value as will manifestly warrant the conclusion that
he intended to effect the release or discharge of a debtor
originally bound. *Burdette* v. *Greer, supra; Bowyer* v.
*Knapp,* 15 W. Va. 277; *Dages* v. *Lee,* 20 W. Va. 584; *Barnes*
v. *Boyers,* 34 W. Va. 303; *Bank* v. *Good,* 21 W. Va. 455;
*McCoy* v. *Jack,* 47 W. Va. 201. Though the same principle
was discussed and approved in the Dages case, the creditor's
acceptance of the obligor's wife as a security for the substi-
tuted obligation was held to be based upon a new and valu-
able consideration, and hence sufficient to discharge the deb-
tor previously bound who did not join in the execution of the
accepted note. In *Bank* v. *Cheeney,* 114 Ala. 536, pleas in an
action brought by a creditor of a dissolved partnership
against the retired partner, that plaintiff knew the terms of
the dissolution, that he assented thereto, that after the ma-
turity of the note sued on he without the knowledge of the
defendant, for a valuable consideration, extended the time
of payment and accepted the notes of the continuing partner,

were held not to show that plaintiff agreed to release defendant as the retiring partner and to rely only on the credit of the other partner.

But again it is argued that the words "for timber in full", written on the face of the check, when considered in connection with the other facts noted, manifest an intention on the part of the payee to rely exclusively upon the credit of the drawer. That conclusion does not necessarily follow. The proof offered to establish these facts is inadequate; and to the memorandum can be accorded no greater efficiency than a receipt acknowledging full payment of an existing debt.

Likewise, and perhaps for a stronger reason, a check drawn by a debtor in favor of his creditor, is merely a provisional payment of the debt. And, although, as held in *Blair* v. *Wilson,* 28 Gratt. 165, the question whether the parties agreed to treat the check as full satisfaction of the debt is one for the jury upon proper instruction, yet to necessitate the submission of that question to jury determination the evidence must tend in a material degree to establish such an agreement. To warrant that inference the facts and circumstances must be positive, clear and convincing.

Plaintiff complains of the instructions given and refused. Since they are not numbered, we will determine their propriety in the order in which they appear in the record; and first of the plaintiff's instructions. The first one is not objectionable, except for abstractness. The second, third and fourth properly were refused; because as prepared they ignore the well established principle that a settlement between a creditor and a member of a firm, made in the absence of and without notice to a former partner, after the dissolution of the partnership due to his retirement, does not, nor does the check given for the debt, conclude him, nor is either the settlement or the check admissible in evidence against him. To bind him, the justness of the balance must again be established. *Burdette* v. *Greer, supra;* 30 Cyc. 668. The fifth is not erroneous; but the sixth and seventh, as modified and given, are objectionable, in that each of them omits reference to the necessity of a valuable consideration to support an express release, and they are not supported by the

evidence on the question of discharge by conduct. The eighth and last one propounds correct legal principles, and is not erroneous, when considered in the light of the facts proved.

Of the six instructions requested. by defendant,. the first obviously was bad, and the. second and third were properly given. But it must not be assumed that a jury can arbitrarily reject the testimony of a witness or disbelieve him merely because he is interested in the subject matter of the litigation. The fourth, fifth and sixth ought not to have been given; the fourth because inapt and misleading. It ignores the same requirements as do plaintiff's instructions six and seven as modified and given. The fifth was improper, because there was not a modification of the timber contract, and no proof competent or sufficient to show that Bays failed to comply with it or caused loss or damage to Johnson. For, although plaintiff agreed to accept and give credit for any amount paid him for timber severed from the land by the vendees of Johnson after his settlement with Bays, no such payments were made to plaintiff. He did it is true accept a note, but the note has not been paid. A note is not the equivalent of payment, as we have seen. The sixth instruction is objectionable, because the record is void of any proof warranting the statement to the effect that plaintiff breached the contract. Besides, it did not submit the question whether a breach had occurred, but told the jury that "the defendant may recover his damage resulting from the breach of the contract upon the part of the plaintiff"; in other words, that the plaintiff had broken the contract, and all that was required of the jury was the ascertainment of the resultant damages.

The jury's response to the first interrogatory propounded at the request of the defendants is wholly immaterial and inconclusive upon any phase of the inquiry. What has been said of the special plea applies with equal propriety and forcefulness to each of the two interrogatories. The inquiry presented by the second, and to which the jury replied "yes", is, "Did the plaintiff at the time he accepted the check of the defendant R. M. Johnson for the sum of $962.65, and delivered to the said Johnson the note for $900 signed by Johnson and Barnes, release the said W. C. Barnes from

the payment of the said note?'' That is, did the release become effective merely by the acceptance of the check and the surrender of the note, whether or not at that time there was an agreement between the parties to that transaction, based upon a valid consideration, that the check was to be deemed and treated as a complete discharge of the joint liability?— a proposition at variance with the principles set forth by us and sustained by the authorities cited.

Because of the erroneous rulings upon the filing of the special plea, the admission of the proof to support it, the inadequacy of the testimony to sustain the verdict, the refusal to admit competent evidence offered by plaintiff in rebuttal of the testimony as to his declarations and for other purposes, and upon instructions and interrogatories, we reverse the judgment, annul the verdict, and award a new trial.

*Reversed, verdict set aside, new trial granted.*