# CHARLESTON.

## CECIL *v.* CLARK.

Submitted March 22, 1910.    Decided October 31, 1911.

1. ATTORNEY AND CLIENT—*Acceptance of Service—Liability for
   Compensation.*

    Parties to a suit accepting the services of an attorney, with
    knowledge thereof, as the services are performed from time to
    time, and in the absence of any agreement for gratuitous ser-
    vice and circumstances from which gratuitous service would be
    implied in law, are liable therefor. (p. 646).

2. SAME—*Employment by Agent—Liability for Compensation.*

    Acquiescence of persons jointly interested in a fund in litiga-
    tion, in the employment of an attorney by one of their number
    for the protection of their common interest, amounts to a repre-
    sentation of agency in the person making such contract, which
    will justify the attorney in making a subsequent contract of
    employment with the same person for protection of the same
    fund in litigation other than that in respect to which he was
    first employed, the parties having knowledge of the rendition of
    his service in such subsequent litigation as it is performed, and
    not disavowing or denying agency of their associate to make
    such employment. (p. 647).

3. RECEIVERS—*Right to Commissions.*

    An attorney jointly interested with his clients in the fund re-
    covered in a suit, and having such funds in his hands, as special

receiver by appointment of the court, may be allowed a com-
mission thereon as receiver, in the absence of an agreement to
handle the fund as such receiver without compensation.  (p.
648).

4.    SAME—*Funds in Hands—Liability for Interest.*
        Failure of a special receiver to obey an order directing him
    to loan funds in his hands, in the absence of any good reason
    shown for such failure, justifies a charge against him, in his
    settlement, of an amount equal to the interest he would have
    received if he had obeyed the order of the court.  (p. 650).

5    SAME—*Settlement of Accounts—Undisputed Claim of Receiver—
        Allowance.*
        It is not error to allow a special receiver a claim, presented
    after the report of the commissioner settling his accounts has
    been acted upon by the court, but before entry of the decree,
    the validity of the claim being undisputed or proved beyond
    question, and a satisfactory excuse given for not having pre-
    sented it before the commissioner's report was made up.  (p.
    650).

6.    APPEAL AND ERROR—*Harmless Error—Admission of Improper
        Testimony.*
        Admission of improper testimony by a commissioner in chan-
    cery, returned with his report, is not cause for reversal of a
    decree, if the appellate court finds sufficient admissible evidence
    to sustain the finding of the commissioner and the trial court,
    as to the item to which the inadmissible evidence relates.
    (p. 651).

Appeal from Circuit Court, Summers County.

Bills by W. P. Cecil and others, and by J. R. Hill and others
against E. W. Clark and others.   From an allowance of certain
attorney's fees W. H. H. Allen and others appeal.

*Reversed in part.   Modified in part.   Affirmed.*

*R. F. Dunlap,* for appellants.

*Price, Smith, Spillman & Clay,* for appellee, George E. Price,
Special Receiver

POFFENBARGER, JUDGE:

On the settlement of the accounts of Geo. E. Price, special
receiver of the circuit court of Summers county, in the chancery
cause of *Cecil et al* v. *Clark et al,* (the decision of an appeal
69 W. Va.

in which is reported in 44 W. Va. 659, where the general nature of the case can be ascertained), respecting a certain fund accumulated in his hands to the credit of divers persons adjudicated in said cause to be the owners of a share or portion of the Henley Chapman land, known in some of the proceedings in said cause as the A. A. Chapman interest, questions arose concerning an attorney's fee, interest on a part of the fund and commissions and other allowances to the receiver, resulting in this appeal.

The attorney's fee of $1,000.00, paid to the late Wesley Mollohan by the receiver, without an order of the court authorizing him to do so, was allowed to him as a proper credit in his settlement both by the commissioner to whom the court referred the matter for inquiry, finding and report, and the court itself, overruling an exception to the commissioner's report. Though Mr. Mollohan rendered the service for which he charged and collected the fee, the allowance thereof to the receiver is resisted by the appellants on the theory or ground of non-employment by them. Admittedly recipients of the benefit of the services in common with others, they deny liability for the fee. This service was rendered, not in the cause above named, but in a contest in the federal courts between the heirs of A. A. Chapman and the appellants and others similarly situated, who purchased the A. A. Chapman interest in the Henley Chapman lands involved in the main cause, at a judicial sale thereof under a decree of the United States Circuit Court, in a creditor's suit against A. A. Chapman or his heirs.

That purchase was made while the other and principal cause was pending. One W. H. H. Allen was induced by some of the A. A. Chapman heirs to become the purchaser at the price of $2,850.00. At or about the same time, an agreement was entered into by which Allen bound himself to pay the firm of Price, Flournoy & Couch twenty five per cent. of what should be realized from the purchase after refunding to Allen his purchase money, in consideration of their conducting "all legal proceedings and litigation in the matter of said purchase and title to said lands, and especially the Flat Top Coal Company suit" then "pending as to said lands, and to render their services through the different courts until there" should be "a

final decree as to said title." Then there was an agreement by which Allen was to divide the remaining three-fourths equally with Wm. A. and Geo. B. Wade.

There was a decree in the main suit in favor of the Chapman heirs. Allen, purchaser of an interest therein as aforesaid, filed his petition in that suit and had that interest decreed to him. The appeal of the trustees of the Flat Top Coal Land Association, disposed of in 44 W. Va. 659, endangered all these interests, as this Court at first reversed the decree and so denied the Chapman heirs any interest in the land. In view of this peril, Mr. Mollohan was employed on a contingent fee of $3,000.00, of which $1,000.00 was to be paid by Allen and his associates, to assist in obtaining a re-hearing. The re-hearing was granted and the decree affirmed. But there was further trouble. Part of the heirs of A. A. Chapman then filed a bill of review in the U. S. Circuit Court to reverse and annul the decree of sale under which Allen had purchased and also a petition in the circuit court of Summers county, denying the validity of that purchase. Mr. Mollohan went right on into the successful defense of the bill of review and petition of the Chapman heirs against Allen, separate and distinct matters from that in which he was first employed. The disputed fee is for this service. As to the other $1,000.00, paid in the spring of 1903, there was no controversy.

This allowance is opposed by Allen and the two Wades, who deny all knowledge of intent or purpose upon the part of Mr. Mollohan to make any charge for this service against their interest in the fund. Their contention is that the firm of Price Flournoy & Couch, which later became Price, Flournoy & Smith, if any body, employed Mr. Mollohan and ought to pay him out of their share of the fund. In support of this position they invoked the terms of the original contract, binding said firm to conduct all legal proceedings and litigation, concerning the title and render their service in respect thereto, through the different courts to a final decree. Opposed to this is the testimony of Mr. Mollohan to an express verbal agreement with Wade for a contingent fee out of the common fund of not less than $1,000.00 for his service in the Chapman heirs suit in the federal court. Those heirs, it will be remembered, attacked

that sale in two ways and by two proceedings at the same time—by a bill of review in the federal court and a petition in the state circuit court. Mr. Mollohan says Wade conferred with him as to the place and best method of defense, and was advised that the safer course was to make it to the bill of review in the federal court. This conversation, as well as the service to which it related, was subsequent to the rendition of service by Mr. Mollohan under his first contract. Mr. Wade makes no specific denial of this conversation, but says in a general way he never had any knowledge of the character of the arrangement made with Mr. Mollohan by Price and Flournoy, and was never asked to give his consent to the payment of a second fee until December, 1904. A copy of what purports to be a letter written by Mr. Flournoy to Wade, Nov. 23, 1903, giving such notice was put in evidence, but the latter denies receipt of it. A memorandum prepared by Mr. Flournoy, and relating to the distribution of the fund or a portion of it, indicates his understanding that such charge was to be made. Mr. Flournoy being dead, this memorandum was put in evidence as bearing upon the question. A letter from W. C. Clephane, attorney for Allen, is relied upon as evidence of notice to the latter of purpose to make the charge. That latter acknowledges receipt of one from Mr. Flournoy requesting a copy of an agreement between Allen and the Wades, and then adds: "Mr. Allen thoroughly understands the agreement with regard to the retention of Mr. Mollohan and acquiesces in it." This letter bears date Jan. 19, 1903. Shortly after that date, sometime in March, 1903, a distribution of some of the funds realized from the litigation was made and Mr. Mollohan had not then been paid his first fee. According to the testimony of Wade and Price, that fee was paid in the spring of 1903, Wade saying in the spring of 1903", and Price "early in 1903". Evidently this correspondence took place in view of the distribution of funds about to be made and, as Mr. Mollohan's first fee had not then been paid, his retention, referred to, was probably the first one. Hence, we do not regard this letter as one clearly importing agreement to the second employment of Mr. Mollohan.

We think Mr. Wade's denial is too general to be considered a response to, or anticipation of, the testimony of Mr. Mollohan.

He does not deny having met Mr. Mollohan and consulted him at Hinton. Nor does he deny knowledge of Mr. Mollohan's services in the federal court suit. Correspondence in evidence shows that W. A. Wade, interested as a party, kept close track of the litigation and had knowledge of what was done. It also shows that Walter C. Clephane, attorney for Mr. Allen, kept himself advised of the proceedings. Mr. Wade, according to the testimony of Mr. Mollohan and Mr. Price, was at Hinton and other places while Mr. Mollohan was engaged in the defense of the suits of the Chapman heirs against Allen and his associates, and this is undenied.

We have no doubt that these parties had knowledge of Mr. Mollohan's services for them in these collateral and subsequent proceedings, constituting a serious menace to the claimants of the A. A. Chapman interests in the land, and willingly accepted the benefit thereof. From the decree of the federal circuit court against them, they appealed to the Circuit Court of Appeals at Richmond. It would be too much to assume that Allen and the Wades, interested in a fund of several thousand dollars, were oblivious to the proceedings in that suit or did not know who was conducting them. They had no agreement or assurance from Mr. Mollohan that his services were gratis or performed without expectation of reward out of their share of the fund at stake. Their acceptance of his services, under such circumstances, without such an agreement or understanding, or notice of their unwillingness to pay him, bound them in law to compensate him. Against this legal view, they invoke and rely upon the terms of the agreement between themselves and the firm of Price, Flournoy & Couch, and also the terms of the first employment of Mr. Mollohan which they argue covered his service in these collateral proceedings as well as in the main case. We do not regard the contract with Price, Flournoy & Couch as imposing upon them any obligation beyond the rendition of their own services in the litigation. Nowhere does it say they shall bear the expenses of that litigation. Their fee was not contingent otherwise than that it should be paid out of such fund as might be recovered, and not by Allen and the Wades personally. They agreed to conduct the proceedings and litigation, but not to employ additional counsel at their own ex-

pense, in case of necessity therefor. Not a word in the agreement imports any such obligation. Moreover, when it became necessary to employ additional counsel on the occasion of a crisis in the progress of the litigation, the owners of the four parts of the A.-A. Chapman interests employed Mr. Mollohan, at their joint expense contingently, not at the expense of Price, Flournoy & Couch. His contingent fee was to come out of the whole fund, not out of the part going to the law firm. This amounts to a practical construction of the contract, consistent with the view here expressed and inconsistent with the contention of the appellants. At the time of Allen's purchase, which antedated this first employment of Mr. Mollohan, somebody gave a warning of defects in the title. The appellants say this was done by the Chapman heirs, wherefore it must have been understood that Mr. Mollohan's employment covered the litigation commenced by them. It suffices to say it does not appear that Mr. Mollohan knew anything of that, since it occurred long before he was employed. Mr. Price swears that warning was given by the Flat Top Coal Land Association and not by the Chapman heirs. Mr. Wade admits that, in the employment of Mr. Mollohan on the first occasion, he represented himself, his brother George Wade and Mr. Allen. The acquiescence of his two associates in this employment by him was a representation by them of his agency for them in matters of that kind. Hence, Mr. Mollohan had the right to rely upon his assurance, for and on behalf of himself and his associates, of an additional contingent fee of one thousand dollars. Thus they come into contact with the law of estoppel. Upon such of the testimony as is clearly admissible and the facts and circumstances, considered in the light of legal principles, our conclusion is that the allowance of this fee was proper. Payment of it without an order was technically wrong, but not destructive of the right.

The commissioner disallowed the receiver's claim of commissions on funds in his hands. Sustaining an exception to this finding, the circuit court allowed him three percent. on $12,-227.18, the aggregate of the first four collections made, which were distinguishable in some respects from the funds subsequently received, and five per cent. upon the royalties received later, amounting to $233.12. He was also allowed a commis-

sion of five per cent. on interest collected on funds loaned out
by him in obedience to the decrees of the court, amounting
to $2,029.76.    The aggregate of these amounts is $701.42.
There went into Mr. Price's hands large sums of money belong-
ing to other heirs of Henley Chapman. This was distributed
to the parties entitled soon after it came into the hands of
the receiver. In his testimony, Mr. Price says he took no com-
mission on the funds going to the Chapman heirs other than
those representing the A. A. Chapman interest or share, and
by way of explanation, that these funds occasioned him no
trouble and imposed upon him but slight responsibility, as they
were paid out very soon after the receipt thereof and had been
paid into a bank to his credit.    On this point, his testimony
is as follows: "By some tacit, if not expressed understanding,
no commission was allowed me in the distribution of the funds
received under the decrees of Jan. 27, 1899 and Oct. 26, 1900
set forth in my first report which was confirmed by the Court
and which was filed Sept. 9, 1902.    These funds were really
never handled by me in any way except that they were paid
into bank immediately checked out and the distribution of them
was comparatively simple as Judge Strothers at that time
received the checks for nearly all of the parties in interest and
disbursed them himself, but it will be noticed that the A. A.
Chapman interest in these funds was left in my hands because
of the pending litigation with reference to it, and I was re-
quired to loan it out, and I did so."    This is relied upon as
evidence of an agreement contemporaneous with his appoint-
ment to serve as receiver without compensation.    It does not
sustain that view.    Manifestly it was subsequent and imports
only a concession or relinquishment of compensation, found upon
facts and circumstances showing lack of responsibility, care and
trouble, relating to that portion of the fund.    We find no evi-
dence of a prior agreement for gratuitous service as receiver.
Mr. Price had an interest in the fund through his firm and sus-
tained a friendly relation toward the appellants as their counsel
and cotenant in the land involved in the litigation, and real-
ized large returns from it, circumstances which might have in-
duced him to serve without compensation, had they been urged
upon him in that connection, but no such agreement is shown.

His allowances come out of the gross fund so that his associates are not thereby charged a commission for handling his own share. In other words he bears this burden *pro rata* with them. In these circumstances, we see no denial of discretionary power in the trial court to allow him commissions, nor any abuse of discretion in the rate of commission allowed. The commissioner based his disallowance of commissions partly upon the untenable view of obligation imposed by the contract of employment to collect and pay over as attorney the money recovered. Exigencies of the case made necessary a receivership, not at all included in the employment as attorney, and probably not contemplated. The fund would have gone into the hands of the general receiver of the court or some other person as special receiver, had not Mr. Price been appointed.

The amount of the allowance is challenged upon the theory of a double charge upon about $3,000.00 of the royalties. Certain statements in Price's deposition constitute the basis of this. He said that in the distribution of royalties, covering the period of 1902 and 1903, commissions had been allowed him on the royalties received and disbursed; that these commissions were taken from the whole fund; that in some instances he had charged these commissions again in the statement accompanying his last report; that this mistake should be corrected; and that no commissions had been allowed him on any of the items from the fourth quarter of 1903 to the second quarter of 1905, prior to the date of his deposition. In another part of his testimony he says the amounts charged from July, 1900, to and including the third quarter of 1903, are the amounts received after the commission had been taken out. For some reason undisclosed, the court, in reforming the commissioner's report, took no notice of this admission, treated the net charges as gross charges and allowed commission thereon. Of course this is an erroneous allowance, and amounts to $181.20.

Though ordered by the court to loan out the funds in his hands to the credit of the owners of the A. A. Chapman interest, the receiver retained unloaned for a period of about two years, the sum of $3,854.98, part of the amount. The commissioner charged him with five per cent. interest on this sum for that time, amounting to $385.50. On an exception

to this charge, the court struck it out and modified the report
to that extent. The receiver makes no satisfactory explana-
tion of his failure to loan said sum. Having admitted such
failure he says "At that time there was difficulty in loaning
funds on call and I did the best I could with it, and have ac-
counted for whatever interest was received." Having in his
hands in 1903 about $13,470.00, which had been loaned and
was bearing interest, he disbursed the sum of $5,388.30 under
an order of the court, part of which might have been paid with
the idle money above mentioned. Instead of doing that,
he collected enough of the money, he had loaned, to make
that disbursement. He does not say the borrower would not
have retained the money then collected so as to enable him to
use the idle money, nor does he show any special effort to loan
the latter. On the whole, we think his explanation is insuffi-
cient and does not sustain the action of the court in striking out
this charge for interest. Under such circumstances, a receiver
is liable for interest. *Roller* v. *Paul,* 106 Va. 214; *Hooper* v.
*Winston,* 24 Ill. 353; *Rosenthal* v.*McGraw,* 71 C. C. A. 277;
High Rec. sec. 804; Beach Rec. (2 Ed.) sec. 757.

After the court had heard and passed upon these and other
contentions raised upon the commissioner's report by exceptions,
but before the entry of the decree complained of, the receiver
discovered an item of $116.82, a payment by check to W. A.
Wade, attorney for himself, George B. Wade, and Allen, which
is not in any way disputed and which he had neglected by over-
sight to present to the commissioner. The allowance of this
was resisted upon the technical ground that it had been pre-
sented too late. It was a credit to which, but for this technical
objection, the receiver was admittedly entitled. The court still
had the cause within its jurisdiction, with power to do sub-
stantial justice between the parties. Upon sufficient cause
shown, it could have set aside its decree, had it been actually
entered, and re-committed the cause to its commissioner. We
have no doubt about the propriety of the allowance of this item.

Refusal of the court to pass upon certain exceptions to testi-
mony, relating to the Mollohan attorney fee, brought to its at-
tention after the hearing and decision, but before entry of the
decree, is assigned as error. Assuming the inadmissibility of

some of this testimony, without actually deciding it, we may say the mere admission of it constitutes no cause for reversal of the decree, since the court, unlike a jury, may exclude from consideration such evidence found in the record in arriving at its finding, without formally noting such exclusion. In view of this, the appellate court goes no further than to see whether the competent evidence sustains the finding of the trial court. Part of the evidence excepted to may have been inadmissible, but, as we think the allowance of the attorney fee is sustained by admissible and competent evidence, such as Mr. Mollohan's conversation with W. A. Wade, and the facts and circumstances adverted to in the disposition of the assignment of error, based upon the allowance of that claim, we consider it unnecessary to pass upon the admissibility of the balance of the evidence or the action of the court in refusing to consider the exceptions.

For the reasons stated, the decree complained of is reversed and set aside in so far as it sustained the receiver's first exception to the report of the commissioner, and modified in so far as it sustains the special receiver's second exception to that report, by deducting, from the allowance of commissions to him, the sum of $181.20. The report of the commissioner as reformed and confirmed by said decree will also be corrected by charging said receiver with an additional sum of $385.50, on account of interest which he should have acquired by loaning out said sum of $3,854.98, and by deducting from the commissions allowed the said sum of $181.20, allowing him commission on said sum of $385.50, amounting to $19.28, increasing the total fund in his hands by the sum of $547.42, and charging him interest at six per cent. on $410.56 three-fourths of the sum so added, belonging to Allen and the Wades, from Feb. 14 1905, until Dec. 14, 1906, amounting to $45.16, which two sums together with $88.90 decreed by the court to Allen and the Wades, make a total of $544.62, and as to modified and corrected, the commissioner's report will be confirmed, and a decree entered requiring the receiver to pay to W. H. H. Allen, W. A. Wade and Geo. B. Wade, or their attorney, said sum of $544.62, with interest thereon from Dec. 14, 1906, together with costs in this Court and costs in the court below as provided in the decree appealed from.

*Reversed in part. Modified in part. Affirmed.*