674 S.E.2d 218

**Howard J. TRICKETT, et al., Plaintiffs Below, Appellees,**

v.

**Joseph A. LAURITA, Jr., et al., Defendants Below,**

and

**J. Anthony & Company, et al., Plaintiffs Below,**

v.

**James Trickett, et al., Defendants Below,**

**Gianola, Barnum & Wigal, L.C., Appellant.**

**No. 34141.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 27, 2009.

Decided: Feb. 5, 2009.

**360**

David M. Jecklin, Gary S. Wigal, Gianola, Barnum, Wigal & London, L.C., Patrick C. McGinley, Morgantown, for the Appellant.

Howard J. Trickett, Hartville, Ohio, Pro Se.

DAVIS, Justice:[1]

The appellant herein, Gianola, Barnum & Wigal, L.C. (hereinafter referred to as

---

Pursuant to administrative orders entered September 11, 2008, and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

"GBW"),[2] appeals[3] from an order entered June 12, 2007, by the Circuit Court of Monongalia County. In that order, the circuit court denied GBW's motion to reconsider and amend its earlier February 18, 2004, "Order Enforcing Settlement, Releasing Defendants and Dismissing Civil Actions" and further denied GBW's motion for attorney's fees. On appeal to this Court, GBW asserts that the circuit court erred by refusing to award its requested attorney's fees in violation of W. Va.Code § 30-2-15 (1923) (Repl.Vol. 2007), and this Court's prior holding in Syllabus point 4 of *Shaffer v. Charleston Area Medical Center, Inc.*, 199 W.Va. 428, 485 S.E.2d 12 (1997). Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we reverse the decision of the Monongalia County Circuit Court and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant appeal are not disputed by the parties. On December 20, 1994, Gary Wigal, Esq.,[4] and the plaintiffs below and appellees herein, Howard J. Trickett, et al. (hereinafter collectively referred to as "Mr. Trickett"),[5] entered into a "Contract for Legal Services." As it relates to fees, the contract specifically stated

[t]his contract is entered into on December 20, 1994, between Howard "Jack" Trickett (Client) and Gary Wigal, Attorney at Law (Attorney).

The Contract for legal services relates to Jack Trickett's involvement in Monongalia County Civil Action Nos. 91-C-615 and 90-P-205.[6] The Client authorizes the Attorney to take any action which is necessary and incidental to the prosecution of the claim. As consideration for the legal services rendered by the Attorney, the Client agrees to the following compensation.

The Client agrees to pay the Attorney a lump sum of Thirty-three and One Third percent (33 1/3%) of all monies and things of any value recovered in the claim by compromise, settlement or verdict after suit. Should the case be appealed by any party after a verdict, the Client agrees to an additional legal fee of 10% of any recovery for legal representation in the appeal.

. . . .

If the Attorney determines, in his sole discretion, before or after a claim is insti-

2. *See* note 4, *infra*.

3. It appears from the Petition for Appeal in this case that both Mr. Wigal, individually and through his current law firm, Gianola, Barnum & Wigal, L.C. ("GBW"), and his former co-counsel, Patrick C. McGinley, appeal from the circuit court's order. However, GBW's arguments do not differentiate between the relief sought by it and that sought by Mr. McGinley. Accordingly, we will collectively refer to the appellants as "GBW," except where the context requires a specific distinction be made.

4. At the time of the events giving rise to the instant proceeding, Gary Wigal was an attorney practicing as a sole practitioner in Morgantown, West Virginia. Since that time, Mr. Wigal has become associated with the law firm that is the appellant in these proceedings, *i.e.*, Gianola, Barnum & Wigal, L.C., and, thus, it is this law firm that is now prosecuting the instant appeal on behalf of Mr. Wigal. During the continuation of the subject litigation, the firm's name has changed to Gianola, Barnum, Wigal & London, L.C. To maintain consistency with the circuit court's order, we will refer to the appellant law

firm's former name, *i.e.*, Gianola, Barnum & Wigal, L.C. (hereinafter referred to as "GBW").

5. The plaintiffs below and appellees herein include Mr. Trickett, individually, and various members of his family, *i.e.*, Bonnie Trickett and Lucille Trickett. David Trickett, who is now deceased, was represented by separate counsel in the underlying proceedings; accordingly, GBW has not asserted any claims against him or his estate.

6. These two cases related to the Trickett family's ownership of property that was subject to mining leases. In Civil Action No. 90-P-205, filed December 3, 1990, the coal companies sued members of the Trickett family; in Civil Action No. 91-C-615, filed August 14, 1991, the Trickett family asserted causes of action against the coal companies and sought damages in tort and contract, alleging that the coal companies had improperly strip-mined their property, failed to remove all coal reserves, and violated various mining laws. The circuit court subsequently consolidated these two cases by order entered January 24, 1997.

tuted, that continuing to defend the claim is not feasible for any reason, the Attorney may withdraw from the case and may rescind this contract. *If the Client terminates the Attorney, the Client agrees to pay the Attorney his accrued fees to date, as well as costs and expenses which have been incurred up to the time.*

The Client authorizes the Attorney to withhold and pay from any recovery resulting from this legal action the following:

1. Attorney's fees in the amount contained in the contract;

2. All costs and expenses advanced by the Attorney;

3. Any other monetary obligations owed by the Client which arise out of the controversy for which the Attorney was employed.

It is further agreed that if the Attorney negotiates a fair and equitable settlement of the claim, and the Client refuses to accept the terms of the settlement, the Attorney can withdraw from further representation of the Client. If the Attorney withdraws under these circumstances, the Client agrees to pay the accrued attorney fees to date, as well as costs and expenses which have been incurred up to the time of the Attorney's withdrawal from the case....

(Footnote added; emphasis added). Pursuant to this contract, Mr. Wigal pursued litigation of Mr. Trickett's interests in the aforementioned cases. During such representation, Mr. Wigal also associated with attorneys Patrick C. McGinley and Robert J. Shostak, as permitted by his contract with Mr. Trickett.

Thereafter, in 1998, Mr. Trickett terminated Mr. Wigal.[7] In accordance with such termination, Mr. Wigal and Mr. McGinley filed, on August 4, 1999, a response objecting to Mr. Trickett's motion, filed July 21, 1999, to have them removed as his counsel and stating that they "believe[d] that justice would not be served if Howard J. Trickett proceeds pro se in a lawsuit of this complexity and scope." Mr. Trickett then filed notices on August 18, 1999, to inform the circuit court that he was dismissing his counsel and would be appearing pro se. Attorneys Wigal and McGinley then moved to withdraw on August 24, 1999. By order entered November 5, 1999, the circuit court granted the dismissal/withdrawal of Mr. Wigal and Mr. McGinley from their representation as counsel for Mr. Trickett. By memoranda dated October 18, 1999, and November 9, 1999, Mr. Trickett requested Mr. Wigal to provide him with a statement of charges. Mr. Wigal responded by letter on November 16, 1999, informing Mr. Trickett that the balance of attorney's fees due and owing from services performed by Mr. Wigal, individually, and by GBW amounted to $21,376.40.[8]

Subsequent to these events, Mr. Trickett hired new counsel, which counsel were subsequently discharged and are not involved in the instant proceedings. In 2000, Mr. Trickett again hired new counsel, *i.e.,* Allen, Guthrie, McHugh & Thomas (hereinafter referred to as "AGMT").[9] During the course of AGMT's representation of Mr. Trickett, a settlement was reached on May 20, 2002, in the approximate amount of $525,000. Following the reaching of said settlement, Mr. Trickett contested the existence of a settlement. During the course of such litigation, on July 17, 2002, GBW,[10] and its co-counsel, attorneys McGinley and Shostak, filed a "Pe-

---

7. During oral argument of this case, Mr. Trickett explained that he discharged Mr. Wigal and his co-counsel because he was dissatisfied with how slowly his case was progressing.

8. It is unclear from the parties' arguments herein whether the aforementioned amount is the entire amount in controversy in the instant appeal or whether additional costs and fees also are sought from Mr. Trickett by Mr. Wigal's co-counsel.

9. In its June 12, 2007, order, the circuit court refers to this law firm as Allen, Guthrie, McHugh

& Thomas, however various documents filed in the circuit court prior to this order refer to this firm by its former name, Allen, Guthrie & McHugh. To maintain consistency with the circuit court's order, however, we will refer to this firm using the name employed by the circuit court, *i.e.,* Allen, Guthrie, McHugh & Thomas ("AGMT").

10. At this time, Mr. Wigal was affiliated with the law firm GBW. *See supra* note 4.

tition for Quantum Meruit Attorney Fees," [11] requesting the court to apportion the attorney's fees resulting from Mr. Trickett's settlement of his case between Mr. Trickett's former counsel, GBW, and his then-current counsel, AGMT. GBW, and its co-counsel, then filed a "Notice of Attorneys' Lien" on September 18, 2003,[12] requesting the circuit court stay the disbursement of the aforementioned settlement proceeds to Mr. Trickett and his counsel, AGMT, until GBW's attorney's charging lien has been satisfied. GBW based its claim for attorney's fees upon its contract with Mr. Trickett or, alternatively, upon recovery of its fees in quantum meruit.

On February 18, 2004, the circuit court entered an "Order Enforcing Settlement, Releasing Defendants and Dismissing Civil Actions." By this order, the circuit court approved the settlement reached by the parties on May 20, 2002, and, correspondingly, released the defendants and dismissed the two civil actions. The circuit court directed the defendants to disburse the "Settlement Funds" to counsel for Mr. Trickett [13] and further permitted, "[c]onsistent with the West Virginia Rules of Professional [C]onduct, the said Allen, Guthrie & McHugh may disburse to itself from the Settlement Proceeds, its fees and costs." However, the court did not address or rule upon GBW's petition for quantum meruit attorney's fees or its notice of attorney's charging lien in this order.

On February 25, 2004, GBW moved the circuit court to reconsider and amend its February 18, 2004, order insofar as said order did not address or rule upon its claims for attorney's fees that it had asserted based upon its contract with Mr. Trickett or, alternatively, in quantum meruit. AGMT responded on April 7, 2004, stating that it never had a fee sharing arrangement with

GBW and did not believe that GBW was entitled to recover any attorney's fees from Mr. Trickett's settlement proceeds.

By order entered June 12, 2007, the circuit court denied GBW's motion for reconsideration and to amend its order of February 18, 2004, and further denied GBW's motion for attorney's fees based upon its contract with Mr. Trickett or in quantum meruit.[14] In rendering its ruling, the circuit court explained that

> [a] valid contract existed between the plaintiffs and GBW, setting forth the remedies available to the parties in the event of a dispute. Specifically, the contract called for any payment of attorney's fees following the dissolution of the attorney-client relationship to be paid by the client, and as such, there is no basis for a recovery or sharing of such fees from funds received by plaintiffs' subsequent counsel.

From this adverse ruling, GBW appeals to this Court.

## II.

### STANDARD OF REVIEW

The sole issue presented by the instant appeal involves questions of law regarding the circuit court's interpretation of W. Va.Code § 30-2-15 (1923) (Repl.Vol. 2007), and the circuit court's application of this Court's prior holding in Syllabus point 4 of *Shaffer v. Charleston Area Medical Center, Inc.*, 199 W.Va. 428, 485 S.E.2d 12 (1997). We previously have held that,

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a

**11.** GBW served AGMT, counsel for Mr. Trickett, with its "Petition for Quantum Meruit Attorney Fees" on July 15, 2002.

**12.** GBW served AGMT, counsel for Mr. Trickett, with its "Notice of Attorneys' Lien" on September 16, 2003.

**13.** A portion of these funds were placed in escrow because it had not yet been determined

whether David Trickett was a party to said settlement. *See supra* note 5.

**14.** After the settlement agreement had been reached, AGMT ceased its representation of Mr. Trickett. Another attorney briefly appeared on Mr. Trickett's behalf, but, as of the entry of the circuit court's order, Mr. Trickett was not represented by counsel. Similarly, Mr. Trickett appears before this Court *pro se*.

clearly erroneous standard. Questions of law are subject to *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

■ With specific respect to the questions of law presented by the instant appeal, we previously have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

Mindful of these standards, we proceed to consider the assignments of error herein raised.

## III.

## DISCUSSION

On appeal to this Court, GBW assigns error to the circuit court's ruling rejecting its claim for an attorney's charging lien to recover payment of unpaid attorney's fees for its representation of Mr. Trickett incurred prior to the firm's discharge by Mr. Trickett.[15] In summary, GBW contends that the circuit court erred by concluding that GBW's only remedy to recover its unpaid attorney's fees was to file a separate breach of contract claim against Mr. Trickett to enforce that portion of the parties' "Contract for Legal Services" pertaining to their fee arrangement when the governing statutory and case law permit a claim for an attorney's charging lien to be made in the action in which such fees were incurred. We agree with GBW that it properly sought to enforce its charging lien in the underlying litigation and that the circuit court erred by refusing to consider GBW's claim in that proceeding. Accordingly, we reverse the circuit court's ruling.

Both the statutory and common law of this State have long recognized an attorney's right to recover his/her unpaid fees by way of a charging lien. In this regard, the Legislature has succinctly stated that "[a]n attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he may recover of such party what his services were reasonably worth." W. Va.Code § 30-2-15 (1923) (Repl.Vol.2007).

■ This Court likewise has long recognized an attorney's right to assert a charging lien to recoup his/her unpaid fees:

An attorney has a lien, on a judgment obtained by him for his client, for his services in the case, the amount whereof is fixed by special contract, although payment thereof cannot be had under the terms of the contract until the money is actually recovered, and no money can be had under an execution on the judgment.

Syl. pt. 1, *Fisher v. Mylius,* 62 W.Va. 19, 57 S.E. 276 (1907). *Accord* Syl. pt. 4, in part, *Shaffer v. Charleston Area Med. Ctr., Inc.,* 199 W.Va. 428, 485 S.E.2d 12 (1997) ("A charging lien is the equitable right of an attorney to have fees and costs due the attorney for services in a particular action secured by the judgment or recovery in such action."); Syl. pt. 2, in part, *State ex rel. Showen v. O'Brien,* 89 W.Va. 634, 109 S.E. 830 (1921) ("An attorney, who prosecutes or assists in the prosecution of a . . . proceeding to final judgment in favor of [his/her client], upon an agreement with [his/her client] or [his/her client's] next friend for an interest in the amount of the recovery, has a lien on the judgment for fees for services rendered by [the attorney] in [his/her client's] behalf."). *See also* W. Va. R. Prof'l Conduct 1.8(j)(1) ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) acquire a lien granted by law to secure the lawyer's fee or expenses[.]"); *Showen,* 89 W.Va. at 636-37, 109 S.E. at 831 ("In this

---

**15.** GBW does not appeal that portion of the circuit court's order rejecting its claim for attor- ney's fees in quantum meruit.

jurisdiction there is and can be no question as to the equitable right of an attorney to claim and have his fees secured to him out of a judgment or recovery he has been instrumental in securing for his client in a particular suit, he, to that extent, being regarded as an equitable assignee of the judgment or decree.... If the client does not obstruct the prosecution of the action or suit, and a judgment or decree in his favor results, the attorney, generally, may readily protect the lien for his services." (citations omitted)).

■■■■ The rationale for permitting an attorney to bring an attorney's charging lien is simple: "Parties to a suit accepting the services of an attorney, with knowledge thereof, as the services are performed from time to time, and in the absence of any agreement for gratuitous service and circumstances from which gratuitous service would be implied in law, are liable therefor." Syl. pt. 1, *Cecil v. Clark*, 69 W.Va. 641, 72 S.E. 737 (1911). *See also* Syl. pt. 2, in part, *Security Nat'l Bank & Trust Co. v. Willim*, 155 W.Va. 1, 180 S.E.2d 46 (1971) ("The general rule is that the creation of a relationship of attorney and client by contract, expressed or implied, is essential to the right of an attorney to recover compensation from one for whose benefit the attorney claims to have rendered legal services."). As such, "[a]n attorney's charging lien for his fee is confined to the judgment or fund recovered by him as attorney[.]" Syl. pt. 2, in part, *Hazeltine v. Keenan*, 54 W.Va. 600, 46 S.E. 609 (1904). Correspondingly, "[a]n attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands." Syl. pt. 4, *Schmertz & Co. v. Hammond*, 51 W.Va. 408, 41 S.E. 184 (1902).

From these authorities, it is clear that GBW had the right to file an attorney's charging lien against Mr. Trickett's settlement proceeds to recover its unpaid attorney's fees that were incurred before Mr. Trickett discharged Mr. Wigal as his counsel. Given the lengthy and convoluted procedural history of the underlying lawsuits, it is apparent that Mr. Wigal's representation of Mr. Trickett contributed in some measure to the ultimate settlement of those actions, which settlement the circuit court ultimately accepted in its February 18, 2004, enforcement and dismissal order. The question remains, however, as to whether GBW was permitted to bring said charging lien in the underlying litigation, as it attempted to do, or whether GBW was required to file its lien in a separate proceeding, as found by the circuit court.

■■■■ In Syllabus point 4 of *Shaffer v. Charleston Area Medical Center, Inc.*, 199 W.Va. 428, 485 S.E.2d 12 (1997), we answered this very question by explaining in what type of litigation an attorney's charging lien may be filed:

A charging lien is the equitable right of an attorney to have fees and costs due the attorney for services in a particular action secured by the judgment or recovery in such action. A charging lien by an attorney against another attorney, involving a case in which each worked, may be premised upon an oral or written fee sharing agreement between the attorneys. A charging lien brought against another attorney may proceed in a separate suit or the underlying action in which the attorneys had formerly worked on together.

Our holding explains that, when two attorneys have a fee sharing agreement, the attorney bringing a charging lien may do so either in the underlying litigation in which the shared fee was earned or in a separate proceeding. Such compensation agreements are not unique to attorneys sharing fees, however. Attorneys routinely enter into contracts with their clients to fix the attorney's compensation for such representation: "[a]n attorney may contract with his client for the rendition of professional services, and in such contract may fix the amount of the compensation to be paid for such services." Syl. pt. 2, *Hubbard v. George*, 81 W.Va. 538, 94 S.E. 974 (1918). Thus, the same reasoning we applied in *Shaffer* to determine that a charging lien could be properly brought in either the underlying litigation or in a separate action applies with equal force to cases such as the instant proceeding in which recovery of legal fees is sought not from another attorney but from the client, him/herself. Accordingly, we hold that an attorney may bring a charging lien against his/her client or

former client premised upon an oral or written contract between the attorney and his/her client or former client which provides for the attorney's compensation. A charging lien brought against an attorney's client or former client may proceed in a separate suit or in the underlying action in which the judgment sought to be attached was obtained. Because GBW brought its charging lien against Mr. Trickett in the underlying litigation in which the judgment sought to be attached had been obtained, the circuit court's order rejecting GBW's claim and requiring it to recoup its expenses in a separate action was erroneous. Therefore, we reverse the circuit court's order.

■ Although we have concluded that GBW was permitted to bring its attorney's charging lien in the underlying litigation, we still must determine whether GBW is entitled to relief and in what amount. Another court that has addressed the propriety of asserting a charging lien in a particular case considered four factors to be determinative:

"[T]here are four requirements for the imposition of an attorney charging lien." . . . First, there must be a valid contract between the attorney and the client, although the contract need not be express. . . . Second, there must be a judgment, or "fund," that resulted from the attorney's services. . . . Third, the attorney must have given clear and unequivocal notice that he intends to assert a lien, and notice must be given to the "appropriate parties." . . . Finally, the lien must be timely—notice of the lien must be given "before the proceeds [from] the judgment have been distributed."

*Computer One, Inc. v. Grisham & Lawless P.A.*, 144 N.M. 424, 429, 188 P.3d 1175, 1180 (2008) (quoting *Sowder v. Sowder*, 127 N.M. 114, 117–18, 977 P.2d 1034, 1037–38 (Ct.App. 1999)) (additional internal citations omitted). *See also Shawzin v. Donald J. Sasser, P.A.*, 658 So.2d 1148, 1150 (Fla.Dist.Ct.App.1995) ("The requirements for imposition of a charging lien are: (1) In order for a charging lien to be imposed, there must first be a contract between the attorney and the client. (2) There must also be an understanding, express or implied, between the parties that the payment is either dependent upon recovery or that payment will come from the recovery. (3) The remedy is available where there has been an attempt to avoid the payment of fees or a dispute as to the amount involved. (4) There are no requirements for perfecting a charging lien beyond timely notice." (citations omitted)). We find these considerations to be consistent with our body of statutory and case law regarding attorney's charging liens, and, thus, similarly hold that there are four requirements for the imposition of an attorney's charging lien against an attorney's client or former client. First, there must be a valid oral or written contract between the attorney and the attorney's client or former client. Second, there must be a judgment or fund that resulted from the attorney's services. Third, the attorney must have filed notice of his/her intent to assert a charging lien, and such notice must have been served on the attorney's client or former client against whose interest in said judgment or fund the lien is sought to be enforced. Fourth, notice of the lien must be filed before the proceeds of the judgment or fund have been distributed.

■ In this case, GBW has satisfied all of the aforementioned criteria requisite to its assertion of a charging lien. First, Mr. Wigal and Mr. Trickett had a valid "Contract for Legal Services" defining the scope of Mr. Wigal's representation and detailing how Mr. Trickett would compensate him for such legal services. Second, there exists a fund, and corresponding judgment, that resulted, to some degree, from Mr. Wigal's services: the settlement ultimately reached between the parties in the underlying litigation. Third, GBW filed its "Notice of Attorneys' Lien" on September 18, 2003; it sought to attach Mr. Trickett's interest in the settlement proceeds and served said notice of lien upon him on September 16, 2003. Fourth, GBW filed its "Notice of Attorneys' Lien" approximately five months before the circuit court's February 18, 2004, order enforcing the parties' settlement, entering judgment in accordance therewith, and distributing the proceeds thereof. Thus, GBW has demonstrated its entitlement to an attorney's charging lien in this case.

▮ Because the circuit court did not fully consider the merits of GBW's request for a charging lien, however, the parties have not been afforded a full and fair opportunity to present evidence in this regard. Specifically, Mr. Trickett objects to GBW's claim for relief based upon his belief that he worked more diligently on his case than did Mr. Wigal or his co-counsel, and he asserts that he has not yet been afforded an opportunity to raise his objections.

When a former client challenges the right to attorney fees or disputes the amount of fees claimed, a trial court cannot summarily award attorney fees. The trial court must first make a determination that the attorney fees are reasonable and such determination can only be made through the evidentiary process.... The former client is entitled to offer evidence of any credits, counterclaims, or defenses as well as to challenge whether or not the attorney helped to create the monetary judgment.

*First Bank of Marietta v. Roslovic & Partners, Inc.,* 138 Ohio App.3d 533, 545, 741 N.E.2d 917, 926 (2000) (citation omitted). Insofar as the circuit court denied GBW's request for a charging lien without a full consideration of the merits of its claim, no determination has been made regarding the extent to which Mr. Wigal's legal services contributed to the ultimate settlement of the underlying actions or the exact amount of the charging lien attributable thereto. Therefore, having determined that GBW properly asserted its charging lien in the underlying litigation and that said lien was properly and timely filed, we find that it is necessary to remand this case to the circuit court (1) for a full evidentiary hearing to determine the role that Mr. Wigal and his co-counsel had in obtaining the settlement of the underlying actions and the precise amount of GBW's charging lien and (2) for the entry of a judgment in that amount.

▮ In determining the amount of GBW's lien, our prior decision in the sole Syllabus point of *Clayton v. Martin,* 108 W.Va. 571, 151 S.E. 855 (1930), is instructive:

Where an attorney has been discharged, without fault on his part, from further services in a suit just begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered; and in the absence of evidence of the reasonable value of such services, no recovery can be had.

*Accord* Syl. pt. 2, in part, *Polsley & Son v. Anderson,* 7 W.Va. 202 (1874) ("That [attorneys] are not necessarily entitled ... in addition to the [sum] certain, named in the contract, to recover the whole amount of the contingent fee therein specified; but for breach of said contract, by [their client], may recover such damages, by way of compensation for their time, labor and attention, as these are reasonably worth; as well, also, for any loss or injury they may have sustained; *provided* the whole recovery shall not exceed the entire amount stipulated in the contract."). In the case *sub judice,* the parties' "Contract for Legal Services," though essentially a contingent fee contract, is consistent with this Court's holding in *Clayton* because it specifically requires Mr. Trickett to pay Mr. Wigal for "his services rendered," Syl., in part, 108 W.Va. 571, 151 S.E. 855, upon Mr. Wigal's termination prior to the completion of the contemplated litigation: "If the Client [Mr. Trickett] terminates the Attorney [Mr. Wigal], the Client agrees to pay the Attorney his accrued fees to date, as well as costs and expenses which have been incurred up to the time." Therefore, the circuit court, on remand, should consider Mr. Wigal's fees, costs, and expenses incurred in his representation of Mr. Trickett in determining the amount of GBW's charging lien.

▮ Finally, we reiterate that an attorney's charging lien is not an attachment of the client's individual assets but rather "[a]n attorney's charging lien for his fee is confined to the judgment or fund recovered by him as attorney[.]" Syl. pt. 2, in part, *Hazeltine v. Keenan,* 54 W.Va. 600, 46 S.E. 609. As such, courts should be vigilant in safeguarding such proceeds when an attorney requests a charging lien to attach such proceeds. Thus, we find the prudent course for courts to follow in such instances to be, and accordingly hold, that when an attorney has properly and timely filed a charging lien in a

particular case, the circuit court must address the charging lien in the final order distributing the judgment or fund to which the lien will attach. Inclusion of the charging lien in said final order will safeguard the attorney's claim by providing notice to other potential creditors of the attorney's interest in such proceeds.

 Although an attorney's charging lien typically is an attachment of the client's "judgment or fund recovered by" the attorney asserting the lien, Syl. pt. 2, in part, *Hazeltine,* 54 W.Va. 600, 46 S.E. 609, where, as here, the judgment proceeds sought to be attached have been disbursed before the court has resolved the attorney's claim for a charging lien, the lien "follows the proceeds, wherever they may be found." *Tunick v. Shaw,* 842 N.Y.S.2d 395, 397, 45 A.D.3d 145, 148 (2007) (citation omitted). Permitting the attorney's charging lien to follow the proceeds of the judgment or fund sought to be attached is premised upon

> the general rule ... that a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject ...[.] It follows its subject and cannot be shaken off by a change of form or substance. It clings to any property or money into which the subject can be traced ...[.]

*Tunick,* 842 N.Y.S.2d at 397, 45 A.D.3d at 148–49 (internal quotations and citation omitted). In the case *sub judice,* the circuit court disbursed the settlement proceeds to Mr. Trickett before it resolved GBW's claim for an attorney's charging lien. Thus, GBW may, upon entry of judgment by the circuit court on remand, enforce its charging lien against whatever property said proceeds may now have become. The facts of the case *sub judice* make it apparent, then, just how imperative it is that courts presented with charging liens address and resolve those matters in conjunction with the entry of the final order disbursing the judgment or fund sought to be attached in order to safeguard the property and resources of the clients who are parties to such proceedings.

## IV.

### CONCLUSION

For the foregoing reasons, the June 12, 2007, order of the Circuit Court of Monongalia County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

Senior Status Justice McHUGH disqualified.

Judge SWOPE sitting by temporary assignment.