**In re Estate of Virgil B. LaROSA, and Joan LaRosa, Debtors.**

No. 03–4115.

United States Bankruptcy Court, N.D. West Virginia.

Jan. 14, 2011.

---

**260**

Judy L. Shanholtz, Michael D. Crim, Richard R. Marsh, McNeer Highland McMunn and Varner, L.C., Clarksburg, WV, Robert W. Trumble, McNeer Highland McMunn and Varner, L.C., Martinsburg, WV, for Debtor.

## MEMORANDUM OPINION

PATRICK M. FLATLEY, Bankruptcy Judge.

Joseph and Dominick LaRosa ("JDL") are judgment creditors of Virgil B. LaRosa (the "Debtor"). In enforcing their pre-bankruptcy judgment against the Debtor, JDL hired Gregory Schillace, an attorney, to represent them. Mr. Schillace states the he is still owed $27,197.64 in attorney's fees, and he requests that this court recognize his attorney's charging lien in bank account funds of $30,635.77 that the Debtor's Chapter 7 trustee proposes to pay to JDL as an interim distribution on account of their judgment lien.

## I. BACKGROUND

As stated by Mr. Schillace, he began representing JDL on August 7, 2002, regarding a 1982 agreement between JDL and the Debtor that had been reduced to judgment on October 25, 1994, in the United States District Court for the District of Maryland. The Debtor denied the validity of the judgment.

On June 17, 2003, Mr. Schillace obtained a writ of execution from the United States District Court for the Northern District of West Virginia with respect to the Maryland judgment. Thereafter, Mr. Schillace served various suggestions of personal property in an attempt to collect on the judgment from the Debtor's West Virginia properties.

On November 19, 2003, the Debtor and his spouse filed their bankruptcy case. The bankruptcy court modified the automatic stay to allow Mr. Schillace and the Debtor to determine the validity of the Maryland judgment in a non-bankruptcy forum. Eventually, the litigation concerning the validity of the Maryland judgment went before the Court of Appeals for the Fourth Circuit, who upheld the judgment's validity. Mr. Schillace states that his entire representation of JDL was related to the enforcement of the Maryland judgment. JDL states that Mr. Schillace represented Dominick LaRosa, individually,

on certain matters not related to the enforcement of the judgment.[1]

On September 17, 2010, Mr. Schillace filed, in this case, his Motion for Payment of Attorney's Lien with Respect to Counsel for Dominick LaRosa and Joseph LaRosa, a copy of which was served on the Debtor's Chapter 7 trustee, JDL, and, by electronic service, on JDL's current bankruptcy counsel.

## II. DISCUSSION

JDL opposes Mr. Schillace's Motion on two grounds: (A) this court lacks subject matter jurisdiction over a dispute of legal fees between a creditor and a creditor's attorney; and (B) Mr. Schillace either does not have a valid attorney's charging lien under West Virginia law, or is not entitled to a charging lien for $27,197.64.

## A. Subject Matter Jurisdiction Over a Creditor's Attorney's Charging Lien

▋ JDL asserts that the dispute with Mr. Schillace has no impact on the Debtor's bankruptcy estate, and, therefore, is not a dispute related to title 11 over which this court has subject matter jurisdiction.

The district courts have original and exclusive jurisdiction of all cases under title 11 and original, but non-exclusive jurisdiction of all civil proceedings arising under, arising in, or related to a case under title 11. 28 U.S.C. § 1334. The district courts may refer § 1334's jurisdictional grant to the bankruptcy courts, 28 U.S.C. § 157(a), and the District Court for the Northern District of West Virginia has done so pursuant to a General Order, effective as of June 27, 1984.

▋ Controversies arise in title 11 when they "have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 555 (3d Cir.1999). Claims arise under title 11 if the claims "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Murad (In re Housecraft Indus. USA, Inc.),* 310 F.3d 64, 70 (2d Cir.2002). A proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate ... [and] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)...." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403, (1995) ("[W]hatever ['related to'] test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *New Horizon of N.Y. LLC v. Jacobs,* 231 F.3d 143, 151 (4th Cir.2000) ("This court has adopted the *Pacor* related to test....").

The right of a creditor's attorney to assert a charging lien under applicable state law is not a right that arises in or under a case under title 11; thus, this court will only have jurisdiction if the right of a creditor's attorney to assert a charging lien on estate distributions to that creditor is "related to" a case under title 11.

Other cases that addressed the issue of a bankruptcy court's subject matter jurisdiction over a creditor's attorney's charging lien have reached conflicting results.[2]

---

1. *Regal Coal, Inc. v. LaRosa,* 1:03–cv–90 (N.D.W.Va.).

2. *Cf., Schacter v. Elghanian (In re West 57th St. Concrete Corp.),* No. 96–cv–3854, 1996 WL 706931, 1996 U.S. Dist. LEXIS 18187

(S.D.N.Y. Dec. 9, 1996) (holding that the charging lien dispute was "a matter solely between the creditor of the debtor and a third party. [The adjudication of the dispute] would not 'produce any benefits for other creditors of the bankruptcy estate nor [would]

The court finds that the better reasoned view is that a creditor's attorney's charging lien on assets of the bankruptcy estate is an interest in the bankruptcy estate's property, which is subject to the court's jurisdiction under 28 U.S.C. § 157(b)(2)(A), inasmuch as the court's determination as to who is to receive a distribution of estate assets concerns the administration of the bankruptcy estate, and § 157(b)(2)(K), inasmuch as a claim of an attorney's charging lien in proceeds held for distribution by the bankruptcy estate requires the court to determine the validity, extent, or priority of liens in property being held by the bankruptcy estate. Bankruptcy courts routinely resolve the conflicting interests of secured creditors in estate property, and the court can discern no significant difference when the conflicting interests in estate property are between the lien interests of a creditor and the creditor's attorney. Accordingly, the court has subject matter jurisdiction over Mr. Schillace's attempt to enforce his attorney's charging lien in property of the Debtor's estate.

## B. Validity and Amount of Mr. Schillace's Attorney Charging Lien Under State Law

JDL asserts that Mr. Schillace's claim for an attorney's charging is improper under West Virginia law on the basis that: (1) Mr. Schillace failed to attach to his Motion the retention contract between himself and JDL; (2) Mr. Schillace failed to comply with West Virginia law by filing and serving a notice of intent to assert a charging lien; (3) Mr. Schillace's billing records are vague and/or unrelated to the cause of action upon which Mr. Schillace prevailed; and (4) Mr. Schillace's billing records do not contain a discernable segregation of charges according to the different matters for which he represented JDL.

### 1 & 2—Validity of Mr. Schillace's Charging Lien

JDL argues that—even if Mr. Schillace is owed fees for his representation—he has

---

such action affect the other creditors' distribution prospects.' ") (citation omitted); *In re Shirley Duke Associates*, No. 78–cv–4977, 1978 U.S. Dist. LEXIS 14055 at *11–12 (S.D.N.Y. Dec. 4, 1978) ("But what all this boils down to is that the attorney-client fee controversy is extraneous to the Bankruptcy Court's functions, as it has no bearing upon the disposition of the debtor's property. The Bankruptcy Judge was correct in holding that he lacked jurisdiction in the matter."); *In re Gucci*, 193 B.R. 417, 420 (Bankr.S.D.N.Y. 1996) ("Donovan Leisure's motion to impose a charging lien is a matter concerning a creditor of the debtor and a third party. . . . Since [the] claim . . . does not arise in or under Title 11 and the claim is not related to a Title 11 case, [the] motion to impose a charging lien is denied for lack of subject matter jurisdiction."); *with In re Logan*, No. 07–12564, 2010 WL 1286651 at *3–4, 2010 Bankr.LEXIS 1023 at *13 (Bankr.E.D.Va. March 29, 2010) ("[T]he court can see no reason, at least in principle, why an attorney who has represented a creditor in a bankruptcy case should not be entitled to recognition of a statutory lien for his or her unpaid fees against the distribution to be paid to the client, provided timely notice is given to the trustee and the client, and with any dispute as to who should receive the payment being decided by the bankruptcy court."); *Seiller & Handmaker v. Smith (In re Commonwealth Institutional Sec.)*, 344 B.R. 827, 828 (Bankr.W.D.Ky.2006) (holding that a dispute over a creditor's attorney's charging lien "is a matter 'concerning the administration of the estate as well as one dealing with the validity, extent and priority of liens.' "); *In re Ralph Lauren Womenswear, Inc.*, 204 B.R. 363, 372–74 (Bankr.S.D.N.Y.1997) ("The bankruptcy court has jurisdiction over the enforcement of [the creditor's attorney's charging lien] because the proceeds of the settlement are from the debtor's estate and because the bankruptcy court had jurisdiction over the original dispute which gave rise to the lien. . . . [I]t affects the administration of the estate and the adjustment of the debtor-creditor relationship. . . . [T]he determination of the lien has a significant connection with the bankruptcy estate.").

not followed the requirements to assert a valid charging lien on the grounds that he has not attached a retention contract to his Motion, and he failed to file and serve his notice of charging lien. Moreover, through June 2003, JDL had paid Mr. Schillace in full; it was during this time that Mr. Schillace obtained the suggestion of execution from the District Court for the Northern District of West Virginia that created the lien on the Debtor's bank account currently being liquidated by the Debtor's Chapter 7 trustee. Arguing that the fund was created in June 2003, JDL contends that the amount billed by Mr. Schillace after that time cannot be enforced by a charging lien.

■ Under W. Va.Code § 30–2–15, "An attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he may recover of such party what his services were reasonably worth." As interpreted by the Supreme Court of Appeals of West Virginia, this statute, when combined with the common law of West Virginia, recognizes an attorney's right to recover unpaid fees by way of a charging lien. Syl. Pt. 1, *Fisher v. Mylius*, 62 W.Va. 19, 57 S.E. 276 (1907) ("An attorney has a lien, on a judgment obtained by him for his client, for his services in the case, the amount whereof is fixed by special contract. . . ."). In *Trickett v. Laurita*, 223 W.Va. 357, 674 S.E.2d 218 (2009), the Court held that four requirements exist for the imposition of an attorney's charging lien:

First, there must be a valid oral or written contract between the attorney and the attorney's client or former client. Second, there must be a judgment or fund that resulted from the attorney's services. Third, the attorney must have filed notice of his/her intent to assert a charging lien, and such notice must have been served on the attorney's client or former client against whose interest in said judgment or fund the lien is sought to be enforced. Fourth, notice of the lien must be filed before the proceeds of the judgment or fund have been distributed.

*Id.* at Syl. Pt. 8.

■ Here, no written contract between Mr. Schillace and JDL was submitted with Mr. Schillace's Motion or Supplemental Response, although he did submit multiple billing records and invoices sent to JDL, many of which were paid. All invoices are based on an hourly billing rate. Based on the conduct of the parties as evidenced by the billing records, the first requirement is met in that a valid contract existed between Mr. Schillace and JDL for legal services, even though the full extent of that contract cannot be wholly determined based on the record as it currently exists before the court.

■ Second, a judgment or fund exists as a result of Mr. Schillace's services. Mr. Schillace domesticated the Maryland judgment in West Virginia in June 2003. Although Mr. Schillace's bill was paid in full through the end of June 2003, the Debtor contested the validity of that judgment, which entailed further litigation and attorney's fees. Ultimately, Mr. Schillace was successful in having the validity of the Maryland judgment recognized, which enabled JDL to assert rights in the Debtor's bankruptcy case as a judgment creditor. JDL's lien rights attach to the bank account under the control of the Debtor's Chapter 7 trustee—not only as a result of domesticating the Maryland judgment, but as a result of his efforts in having the validity of that judgment upheld. Consequently, the court finds no basis to limit the amount of the attorney's charging lien to unpaid attorney's fees at the time the

judgment lien was created. Fees incurred by Mr. Schillace in enforcing the judgment lien rights are still recoverable under an attorney's charging lien. *E.g., Renick v. Ludington,* 16 W.Va. 378, 392 (1880) ("While the lien of the attorney is a special lien for his services in obtaining the particular judgment or decree only, yet the principles on which it is based obviously extend the lien to all his services rendered in obtaining the particular judgment or decree, though those services may not all have been rendered in the particular suit in which the judgment or decree was rendered, but were in part rendered in other suits, all tending to and finally ending in the judgment or decree on which the lien is claimed. [T]he attorney's lien extended to fees in suits arising from and incidental to the enforcement of the judgment which he had obtained.").

■ Third, Mr. Schillace filed his Motion for Payment of Attorney's Lien with Respect to Counsel for Dominick LaRosa and Joseph LaRosa on September 17, 2010, served it on JDL, their counsel, and the Debtors' Chapter 7 trustee. The Motion plainly states that he is asserting an attorney's charging lien of $27,197.64 on the bank account funds sought to be disbursed to JDL, by the trustee, on account of their judgment lien. Thus, all relevant parties have notice, and service, of Mr. Schillace's intention to assert a charging lien on the bank account funds subject to JDL's judgment lien.

■ Fourth, the Debtors' Chapter 7 trustee has not made the distribution to JDL; thus, the notice of the lien was timely filed and served.

Consequently, the court finds that Mr. Schillace has valid attorney's charging lien in the bank account funds sought to be distributed by the Debtor's Chapter 7 trustee to JDL on account of their judgment lien.

### 3 & 4—Amount of Mr. Schillace's Charging Lien

JDL contends that Mr. Schillace is not entitled to a $27,197.64 charging lien on the grounds that he has not demonstrated that his billed attorney time is related to the cause of action upon which Mr. Schillace prevailed, his billing records are vague, and do not contain a discernable segregation of charges according to the different matters for which he represented JDL.

Mr. Schillace asserts that all his representation was grounded in the enforcement of the Maryland judgment. Mr. Schillace has not had an opportunity to rebut JDL's assertion regarding his allegedly vague billing records, or allegations of unrelated representation—particularly as it relates to his alleged representation of Dominick LaRosa in *Regal Coal, Inc. v. LaRosa,* 1:03–cv–90 (N.D.W.Va.). Likewise, the court does not have a copy of Mr. Schillace's attorney-client retention agreement that sets forth the scope of his representation. Consequently, the court will set an evidentiary hearing on Mr. Schillace's motion whereby the parties can present evidence and testimony regarding the amount of Mr. Schillace's charging lien.

### III. CONCLUSION

For the above stated reasons, the court concludes that it has subject matter jurisdiction over Mr. Schillace's attorney's charging lien claim against property to be distributed by the bankruptcy estate to Mr. Schillace's creditor-clients. The court also concludes that Mr. Schillace has met the requirements under West Virginia law to assert an attorney's charging lien in this matter, but that the court cannot properly adjudicate the dispute between JDL and Mr. Schillace regarding the amount of that lien in the absence of an evidentiary hear-

ing. The court will enter a separate order setting the evidentiary hearing.